666 A.2d 710

**Pasquale P. GIORDANO and Maryann Giordano, His Wife**

**v.**

**A.C. & S. INC., Anchor Packing Company, Armstrong World Industries Inc., Asbestos Products Mfg. Corporation, Carey Canada, Celotex Corporation, Certain–Teed Corporation, Di Distributors Inc., F/K/A Delaware Insulation Co., Eagle Picher Industries Inc., Fibreboard Corporation, GAF Corporation, Garlock Incorporated, H & A Construction, Keene Corporation,**

National Gypsum, Owens–Corning Fiberglas, Owens Illinois Inc., Pfizer Inc., Pittsburgh Corning Corporation, H.K. Porter Company Inc., T & N PLC., Raymark Industries Inc., Rock Wool Manufacturing Co., Smith & Kanzler, Sprayon Research Corporation, Southern Textile Corporation, U.S. Mineral Products, United States Gypsum Company, W.R. Grace Company, John Crane Houdaille Inc., A/K/A Crane Packing Company, Amchem Products Inc., Atlas Turner Ltd., Foster–Wheeler Corporation, Georgia–Pacific Corporation, Dana Corporation, Basic Incorporated, J.W. Roberts Ltd., Spray Craft Inc., American Energy Products Inc., and Babcock & Wilcox.

Appeal of OWENS–CORNING FIBERGLAS CORPORATION

Edgar S. BOYER and Dolores M. Boyer, His Wife

v.

A.C. & S. INC., Anchor Packing Company, Armstrong World Industries Inc., Asbestos Products Mfg. Corporation, Carey Canada, Celotex Corporation, Certain–Teed Corporation, Di Distributors Inc., F/K/A Delaware Insulation Co., Eagle Picher Industries Inc., Fibreboard Corporation, GAF Corporation, Garlock Incorporated, H & A Construction, Keene Corporation, National Gypsum, Owens–Corning Fiberglas, Owens Illinois Inc., Pfizer Inc., Pittsburgh Corning Corporation, H.K. Porter Company Inc., T & N PLC., Raymark Industries Inc., Rock Wool Manufacturing Co., Smith & Kanzler, Sprayon Research Corporation, Southern Textile Corporation, U.S. Mineral Products, United States Gypsum Company, W.R. Grace Company, John Crane Houdaille Inc., A/K/A Crane Packing Company, Amchem Products Inc., Atlas Turner Ltd., Foster–Wheeler Corporation, Georgia–Pacific Corporation, Dana Corporation, Basic Incorporated, J.W. Roberts Ltd., Spray Craft Inc., American Energy Products Inc., and Babcock & Wilcox

Appeal of OWENS–CORNING FIBERGLAS CORPORATION

Nicholas Theodore DECERCHIO and
Bernice C. Decerchio, His Wife

v.

A.C. & S. INC., Amchem Products Inc., American Energy Products Inc., Anchor Packing Company, Armstrong World Industries Inc., Asbestos Products Mfg. Corporation, Atlas Turner Ltd., Babcock & Wilcox, Basic Incorporated, Carey Canada, Celotex Corporation, Certain–Teed Corporation, Dana Corporation, Di Distributors Inc., F/K/A Delaware Insulation Co., Eagle

234

Picher Industries Inc., Fibreboard Corporation, Foster–Wheeler Corporation, GAF Corporation, Garlock Incorporated, Georgia Pacific Corporation, H & A Construction, H.K. Porter Company, Inc., J.W. Roberts Ltd., John Crane Houdaille Inc., A/K/A Crane Packing Company, Krane Corporation, National Gypsum, Owens–Corning Fiberglas, Owens Illinois Inc., Pfizer Inc., Pittsburgh Corning Corporation, Raymark Industries Inc., Rock Wool Manufacturing Co., Smith & Kanzler, Southern Textile Corporation, Spray Craft Inc., Sprayon Research Corporation, T & N PLC., U.S. Mineral Products, United States Gypsum Company and W.R. Grace Company

Appeal of OWENS–CORNING FIBERGLAS CORPORATION.

Superior Court of Pennsylvania.

Argued Sept. 14, 1995.

Filed Oct. 17, 1995.

W. Matthew Reber, Wynnewood, for appellant.

Michael P. Kutzer, Philadelphia, for Giordano, Boyer & Decerchio, appellees.

Before KELLY, FORD ELLIOTT, and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Pasquale Giordano, Edgar Boyer and Nicholas DeCerchio have several things in common: they all inhaled asbestos dust from Owens–Corning products in the course of their employment as steamfitters; they developed pulmonary asbestosis and asbestos-related pleural disease; and despite their cigarette habits, a jury saw fit to award them damages in their suits against Owens–Corning. As is common for asbestos litigation, their cases were consolidated in a reverse bifurcated trial, where the issue of damages was tried first. The jury awarded between $150,000 to $275,000 per plaintiff for past and projected future medical expenses, and non-economic damages such as pain, humiliation, embarrassment, and fear of future progression of their asbestosis. The jury also turned

down the plaintiffs' loss of consortium claims. The trial court denied Owens–Corning's post-trial motions for JNOV, new trial, or remittitur, and awarded appropriate delay damages to the plaintiffs.

After the damages trial, the plaintiffs accepted Owens–Corning's stipulation that it was responsible for one-tenth of their damages. This stipulation obviated the need for a liability trial, and the plaintiffs now have judgments against Owens–Corning for between roughly $28,000 and $50,000. All issues being settled, Owens–Corning appealed to this Court. The trial court was apparently unaware of the liability stipulation, and wrote an opinion urging us to quash the appeals as interlocutory. Because all the issues are settled, the appeals are properly before us. Moreover, because Owens–Corning raises mostly questions of law, our review is not hampered by the lack of a trial court opinion.[1]

Owens–Corning first argues that the trial court should not have allowed plaintiffs to recover damages for the possibility that their asbestosis might get worse, and their accompanying fear that it would. At trial, the plaintiffs' medical experts opined that asbestosis tends to get progressively worse over time, but the precise course of progression could not be accurately predicted for any given case. Owens–Corning contends that this testimony was too speculative to permit the jury to award damages for the possibility of future progression of plaintiffs' asbestosis.

We disagree. It is well settled that once an asbestos-related disease becomes symptomatic, it is compensable. *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993), *alloc. granted*, 539 Pa. 651, 651 A.2d 539 (1994). To fully compensate a plaintiff for an asbestos-related injury that is likely to get progressively worse, a jury may award for

1. These appeals were filed before judgments were entered on the trial court docket, and are thus premature. *See* Pa.R.A.P. 301. Pursuant to Pa.R.A.P. 902, appellant's counsel was directed to praecipe the trial court for entry of judgment within ten days. Appellants have complied, and the judgments have been entered. Hence under Pa.R.A.P. 905(a) appellant's notices of appeals will be treated as having been filed after the entry of judgments.

future harm. *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985). The prognosis need not be made with the same degree of certainty that is required for causation. *Id.* at 162–64, 494 A.2d at 1093. Owens–Corning argues that the plaintiffs' medical experts could not meet even this lower threshold of certainty, so their testimony should not have been admitted. True, the experts were only able to testify as to the progression of the typical case of asbestosis, and could not predict what might happen to these individual plaintiffs. It is not improper to use statistical expectations in assessing damages, however. No expert could predict how long each plaintiff would live with any degree of certainty, but Owens–Corning raised no objection to the use of actuarial tables to estimate the plaintiffs' life expectancies. R.R. 141–42.

■ Nor do we find that this case involves any violation of the rule laid down in *Marinari v. Asbestos Corp., Ltd.*, that juries may only award damages for the "natural, predictable progression" of an asbestos-related disease. 417 Pa.Super. 440, 443–45, 612 A.2d 1021, 1023 (1992) (*en banc*). The trial court used this precise language in its charge, and further instructed the jury that their verdict must be based upon the evidence, and not mere conjecture or speculation. R.R. 149–50. The same standards applied to the jury's consideration of plaintiffs' fear that their diseases would progress. The verdict was not broken down into categories, so we do not know if the jury even awarded anything for future progression of the disease, or fear of it. An assessment of the future likelihood and extent of a disease's progression is a quintessential fact question, and like the trial court, we have no basis for rejecting a properly instructed jury's finding on this issue.

■ Owens–Corning next argues that the trial court erred by instructing the jury that they could award damages for embarrassment or humiliation. The trial court mentioned embarrassment and humiliation in the context of explaining what goes into the non-economic component of damages: e.g., pain, suffering, "loss of life's pleasures, humiliation, embar-

rassment and anything else that might come under the question of suffering." R.R. 146. This is a proper definition of the concept behind non-economic damages: how did the tort make the plaintiff's life worse? Economic components of damages such as medical expenses and lost wages can be quantified. Because we cannot measure pain and lost pleasure in precise units, we must cast a broad net to properly apprise the jury of what it is they must reduce to a dollar value. Plaintiffs' asbestos-related breathing problems prevented them from socializing and forced family and friends to take over tasks they used to do—this could be considered embarrassing, or even humiliating to some degree. The instruction was therefore proper.

Finally, Owens–Corning argues that they should get a new trial because the verdicts were shockingly high. Since the trial court denied this claim in post-trial motions, it was obviously not shocked by the size of the plaintiffs' verdicts. Moreover, the trial court was also unaware that Owens–Corning would pay only one-tenth of those verdicts; hence, the verdicts which failed to shock the trial court were a full order of magnitude greater than the plaintiffs' current judgments against Owens–Corning.

We have observed that when a trial court refuses a new trial because it fails to see "injustice shining forth like a beacon" from the verdict, an appellate court will be hard pressed indeed to disagree. "Review of a cold record acts much like the inverse square law of light propagation—any beacon of injustice will necessarily appear even dimmer to our eyes than it was to the trial court's." *Matheny v. West Shore Country Club*, 436 Pa.Super. 406, 408, 648 A.2d 24, 25 (1994), *alloc. denied*, 540 Pa. 601, 655 A.2d 990 (1995). Here, we must take a beacon that was too dim for the trial court to see, reduce its luminosity by a full order of magnitude, and then apply the inverse square law. Needless to say, we also fail to see injustice shining forth like a beacon from these small

judgments, and find no abuse of the trial court's discretion.[2]
Affirmed.

**2.** We think it proper to consider the question of excessiveness from the perspective of the size of the judgments which Owens–Corning must pay, not the size of the verdicts rendered. Asbestos cases are based on products liability theory, which seeks to best apportion the cost of injuries caused by defective products on the manufacturers who can and should bear those costs. Even if we were to focus on the size of the verdicts, though, we would still see no abuse of discretion or cause for new trials. *See Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174 (1992); *Matheny, supra.*