Raymond LONASCO and
Ann Lonasco, h/w

v.

A–BEST PRODUCTS CO., A.P. Green Industries, Inc., a/k/a A.P. Green Refractories, Co., a/k/a A.P. Green Services, Inc., A.W. Chesterton, Inc., A.C. and S. Inc., Airco Welders Supply, Anchor Packing Company, Argo Asbestos Rubber, Armstrong World Industries, Inc., Asbestospray Corporation, Bevco Industries, DAR Industrial Products, Inc., Fibreboard Corporation, Flexitallic Gasket Co., Flintkote Co., Foster Wheeler Corporation, GAF Corporation, Garlock Inc., General Electric Company, George V. Hamilton, Inc., Georgia–Pacific Corporation, Gibson–Homans, Gould, Inc., Keene Corporation, Melrath Gasket, Inc., National Gypsum Company, Nosroc Corporation, Okonite, Owens–Corning Fiberglas Corp., Owens–Illinois, Inc., Pittsburgh–Corning Corp., Rhone–Poulenc AG, T & N PLC, U.S. Gypsum Co., Uniroyal, Inc., Westinghouse Electric Corp., Sepco Corp.

Appeal of Garlock, Inc. (at Nos. 2954, 3309 PHL 1998).

Raymond Lonasco and
Ann Lonasco, h/w

v.

A–Best Products Co., A.P. Green Industries, Inc., a/k/a A.P. Green Refractories, Co., A.P. Green Services, Inc., A.W. Chesterton, Inc., A.C. and S. Inc., Airco Welders Supply, Anchor Packing Company, Argo Asbestos Rubber, Armstrong World Industries, Inc., Asbestospray Corporation, Bevco Indus-

tries, Dar Industrial Products, Inc., Fibreboard Corporation, Flexitallic Gasket Co., Flintkote Co., Foster Wheeler Corporation, GAF Corporation, Garlock Inc., General Electric Company, George V. Hamilton, Inc., Georgia–Pacific Corporation, Gibson–Homans, Gould, Inc., Keene Corporation, Melrath Gasket, Inc., National Gypsum Company, Nosroc Corporation, Okonite, Owens–Corning Fiberglas Corp., Owens–Illinois, Inc., Pittsburgh–Corning Corp., Rhone–Poulenc AG, T & N PLC, U.S. Gypsum Co., Uniroyal, Inc., Westinghouse Electric Corp.

Appeal of Owens–Corning (formerly known as Owens–Corning Fiberglas Corporation)(at No. 2955 EDA 1999).

John Collins and Margaret Collins, h/w

v.

A.P. Green Industries, Inc., a/k/a A.P. Green Services, Inc., A.W. Chesterton, Inc., A.C. and S. Inc., Anchor Packing Company, Argo Packing Company, Armstrong World Industries, Inc., Asbestos Insulation Company, Associated Insulation Inc., Bevco Industries Cement, Asbestos Products Company, Cleaver–Brooks,Inc., Collins Packing Co., Columbia Boiler Co. Of Pottstown, Crouse–Hinds Dana Corporation, Eaton Corporation F.B. Wright Distribution Company, Federal Process Company, Fibreboard Corporation, Flexitallic Gasket Co., Flintkote Co., Foster Wheeler Corporation, GAF Corporation, Garlock Inc., General Electric Company, Keene Corporation, Melrath Gasket, Inc., National Gypsum Company, Nosroc Corporation, Okonite Owens–Corning Fiberglas Corp., Owens–Illinois, Inc., Pecora Corporation, Philadelphia Insulated Wire Company, Pittsburgh–Corning Corp., Rhone–Poulenc AG, Rutland

Fireclay, T & N PLC, Thermo Electric Company, U.S. Gypsum Co., U.S. Mineral Products Co., Uniroyal, Inc., Vellumoid, Inc., W.B. Gallagher Company, W.R. Grace & Co.-Conn. and Westinghouse Electric Corp.

Appeal of Garlock, Inc. (at No. 3314 PHL 1998).

Superior Court of Pennsylvania.

Argued March 22, 2000.

Filed July 25, 2000.

Fredric L. Goldfein, Philadelphia, for Garlock.

W. Matthew Reber, Philadelphia, for Owens-Corning.

Robert E. Paul, Philadelphia, for Lonasco.

Before POPOVICH, BROSKY and BECK, JJ.

POPOVICH, J.:

¶ 1 This is a consolidated appeal from the orders entered on September 25, 1998, and August 27, 1999, in the Court of Common Pleas of Philadelphia County. The underlying action was initiated by plaintiffs Raymond and Ann Lonasco who sought to recover damages from several manufacturers of asbestos and asbestos-containing products. A "reverse-bifurcated" proceeding was held, and the consolidation of additional cases occurred during the liability portion. Two separate juries rendered verdicts in favor of the plaintiffs. Upon review, we affirm the orders of the trial court.

¶ 2 In 1991, Raymond and Ann Lonasco ("plaintiffs/appellees") commenced a personal injury action by complaint filed against numerous defendants, including Owens–Corning and Garlock, Inc., alleging that plaintiff/appellee Raymond Lonasco's asbestos-related injuries were caused by exposure to defendants' asbestos products while employed as a sheet metal worker at the Philadelphia Naval Shipyard. Plaintiffs/appellees sought damages for the injuries resulting from Mr. Lonasco's exposure to asbestos. As stated previously, the action was "reverse-bifurcated", with issues of medical causation and damages constituting the first phase of trial ("Phase I") followed by a separate liability proceeding before a different jury ("Phase II").

¶ 3 When Phase I of the case commenced in January 1995, Mr. Lonasco was fifty-one years old and working at the Philadelphia Naval Shipyard. The evidence at Phase I established that Mr. Lonasco, save for a period of unemploy-

ment from 1971–1973, was employed at the Philadelphia Naval Shipyard from 1965. Plaintiffs/appellees alleged that between 1965–1971 Mr. Lonasco's occupational duties brought him into daily contact with asbestos-containing flat sheets, pipe covering, gaskets, cloth and cement manufactured by the defendants. Medical testimony asserted that Mr. Lonasco had asbestosis, pleural thickening and plaque formation. In addition, Mr. Lonasco complained of shortness of breath when climbing ladders, gangways or stairs that resulted in his employer placing him on light duty. Mr. Lonasco testified that since his shortness of breath he can no longer engage in his usual physical exercise or house work. Doctor Gelfand testified at trial that Mr. Lonasco's pleural thickening, plaque formation, asbestosis and shortness of breath were the results of Mr. Lonasco's exposure to asbestos.

¶ 4 Defendants moved for a non-suit, and, thereafter, a directed verdict based upon plaintiffs'/appellees' alleged failure to demonstrate a compensable asbestos-related condition. The motions were denied and the jury returned a verdict in favor of plaintiffs/appellees for the total amount of $1,043,000. Of that total award, $869,000 went to Mr. Lonasco and $174,000 was awarded to Mr. Lonasco's wife, Ann Lonasco, for loss of consortium. Thereafter, the case was consolidated with several others for Phase II including that of plaintiffs John and Margaret Collins.

¶ 5 Phase II commenced on October 24, 1996, before both a different trial judge and jury. Garlock moved for a non-suit against plaintiffs/appellees and the Collins-plaintiffs. The trial court denied Garlock's motion for a non-suit but ultimately granted Garlock's motion for a directed verdict in relation to plaintiffs/appellees and the Collins-plaintiffs. Phase II concluded with Owens–Corning stipulating to its liability with plaintiffs/appellees and the Collins-plaintiffs.

¶ 6 Owens–Corning filed timely post-trial motions that asserted *inter alia* that the trial court erred in granting the directed verdict in favor of Garlock with respect to both plaintiffs/appellees and the Collins-plaintiffs. In addition, Owens–Corning requested that a new Phase II trial be granted for Garlock. Plaintiffs/appellees filed a post-trial motion that also challenged the directed verdict and sought a new trial as to the liability of Garlock. The Collins-plaintiffs did not seek post-trial relief. By the order entered on September 25, 1998, the trial court granted plaintiffs'/appellees' and Owens–Corning's motions for a new trial as to Garlock's liability. This order granted a new trial in both plaintiffs'/appellees' case and the Collins-plaintiffs' case. The trial court did not address Owens–Corning's remaining post-trial motions. Pursuant to Pa.R.A.P. 311(a)(6), Garlock filed an interlocutory appeal challenging the grant of a new trial with respect to both plaintiffs/appellees and the Collins-plaintiffs at Numbers 3309 and 3314, Philadelphia 1998, respectively. Garlock filed a motion to consolidate these cases for appeal that was granted on March 31, 1999.

¶ 7 By order dated August 2, 1999, the Superior Court directed the trial court to determine the outstanding Phase I issues in Owens–Corning's post-trial motions and to file an opinion pursuant to Pa.R.A.P. 1925(a). By an order entered on August 27, 1999, the trial judge who presided over the Phase I trial denied the remainder of Owens–Corning's post-trial motions and filed a supporting opinion. Owens–Corning filed a timely cross-appeal at Number 2955 E.D.A. 99 that challenged the denial of its post-trial motions.[1] In response to the August 27, 1999 order, Garlock claimed errors on appeal similar to those found in

1. Although Owens–Corning filed post-trial motions with respect to the verdicts rendered in favor of the Collins-plaintiffs as well as plaintiffs/appellees, Owens–Corning's present appeal raises issues with respect to only plaintiffs/appellees.

Owens–Corning's post-trial motions at Number 2954 E.D.A. 99.

### Phase I of the Trial

■ ¶ 8 We begin by addressing the argument raised by both Owens–Corning and Garlock, that the trial court erred in the Phase I portion of the case by failing to grant a judgment notwithstanding the verdict ("j.n.o.v.") in their favor.[2] Both Owens–Corning and Garlock allege that plaintiffs/appellees failed to prove that Mr. Lonasco suffered a compensable asbestos-related injury. In support of this argument, Owens–Corning and Garlock cite to the cases of *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993), and *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996), for the proposition that a plaintiff claiming non-malignant asbestos-related personal injuries must present objectively verifiable proof of functional impairment in order to support a cause of action.

■ ¶ 9 When reviewing a denial of judgment notwithstanding the verdict,

> An appellate court must decide whether there was sufficient evidence to sustain the verdict; our scope of review is very narrow: all evidence and all reasonable inferences drawn therefrom must be considered in the light most favorable to the verdict winner. Judgment notwithstanding the verdict can be entered only if the movant is entitled to judgment as a matter of law or if evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. We will reverse a trial court's grant or denial of a judgment notwithstanding

2. Although both parties also aver that the trial court erred in refusing to grant a non-suit and a directed verdict, this opinion will address only the trial court's refusal to grant a j.n.o.v.

3. We further note that *Simmons, supra,* was to be given prospective application and is, therefore, inapplicable to any case commenced prior to the date of the *Simmons* decision. *Bertoline v. Abex Corp.*, 723 A.2d

the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super.1999) (citations omitted throughout).

¶ 10 In 1993, the *Giffear* case marked a noteworthy change in the field of asbestos litigation. Prior to *Giffear, supra,* plaintiffs who suffered from asymptomatic pleural thickening could recover nominal damages for the non-malignant affliction and subsequently could bring a cause of action for any malignancy, such as cancer. *See Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021, 1023 (1992). This concept was known as the "two disease rule" since it allowed a plaintiff to recover twice for his exposure to asbestos. *See Id.*

¶ 11 The Superior Court in *Giffear, supra,* however, changed the complexion of asbestos law by specifically holding that "pleural thickening, absent disabling consequences or manifest physical symptoms, is a non-compensable injury and is therefore not a cognizable claim in the Commonwealth." *Giffear*, 632 A.2d at 884. Thereafter, the Pennsylvania Supreme Court reviewed the *Giffear* holding in the case of *Simmons v. Pacor, supra.* In affirming *Giffear, supra,* the Court observed that pleural thickening is considered asymptomatic when "individuals are able to lead active, normal lives, with no pain or suffering, no loss of an organ function, and no disfigurement due to scarring." *Simmons*, 674 A.2d at 236 (citing *Marinari v. Asbestos Corporation, Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021, 1025 (1992)).[3]

206, 211 (Pa.Super.1998), *appeal denied,* 560 Pa. 693, 743 A.2d 912 (1999); *see also McCauley v. Owens–Corning Fiberglas Corp.*, 715 A.2d 1125 (Pa.Super.1998); *Cleveland v. Johns–Manville Corp.*, 547 Pa. 402, 690 A.2d 1146 (1997). Presently, plaintiffs/appellees commenced this suit in 1991 which was well before *Giffear* and *Simmons*.

However, as evidenced by the trial court's jury instructions, the trial court erroneously

¶ 12 In the present case, both Owens–Corning and Garlock rely upon the cases of *Taylor v. Owens–Corning Fiberglas Corp.*, 446 Pa.Super. 174, 666 A.2d 681 (1995), and *Randt v. Abex Corp.*, 448 Pa.Super. 224, 671 A.2d 228 (1996), for the manner in which they apply the *Giffear-Simmons* standard. Owens–Corning and Garlock argue that pursuant to *Taylor* and *Randt*, plaintiffs/appellees failed to prove a compensable asbestos-related injury under Pennsylvania law.

¶ 13 In *Taylor, supra,* the three appellants were diagnosed with an asymptomatic asbestos-related disease and suffered no discernible physical symptoms or functional impairment. In upholding the lower court's grant of a summary judgment based on *Giffear, supra,* this court observed that one appellant suffered no discernible symptoms while the other two appellants suffered only from shortness of breath. We continued our observation to note that all three appellants "lead active, normal lives and suffer no pain, loss of organ function or other manifestations of asbestosis." *Taylor,* 666 A.2d at 687–688. With regard to shortness of breath we held the following:

> Shortness of breath *alone* is not a compensable injury under *Giffear v. Johns–Manville Corp., supra,* because it is not a discernible physical symptom, a functional impairment, or a disability. It is common knowledge that breathlessness is also associated with any number of non-asbestos-related ailments including lung cancer, excessive cigarette smoking, heart disease, obesity, asthma, emphysema and allergic reactions. All three appellant-husbands smoked cigarettes at some point in their lives and the record reflects that appellant Watkins is overweight and suffers from heart problems.

applied post-*Simmons* law to the case. Although appellees/plaintiffs objected to the application of post-*Simmons* law at trial, appellees/plaintiffs waived this claim on appeal due

*Taylor,* 666 A.2d at 687 n. 2 (emphasis added).

¶ 14 Similar to the *Taylor* case, *Randt, supra,* involved three appellants who claimed that the trial court erred by denying their request for a new trial in light of the jury's decision that the appellants developed non-compensable asbestos-related diseases. Two of the three appellants complained of shortness of breath. Of these two, one appellant had mild pleural thickening and no pulmonary asbestosis while the other appellant had contracted asbestosis. However, the shortness of breath of both appellants was attributable to asthma, coronary disease, artery disease, arterial hypertension, restrictive ventilatory impairment, and obesity. In finding that the jury interrogatories were in conformance with the law, this court recognized the general holding in *Giffear, supra,* as well as the specific holding in *Taylor, supra,* holding that shortness of breath alone is not compensable in light of the fact that breathlessness is also associated with numerous non-asbestos ailments such as those affecting both appellants. *Randt,* 671 A.2d at 232.

¶ 15 Herein, Mr. Lonasco does not suffer from shortness of breath alone. In the present case, Mr. Lonasco, at the age of 51, was diagnosed with pleural thickening, plaque formation and asbestosis. Mr. Lonasco also suffers from shortness of breath which Mr. Lonasco's medical expert testified was a result of his exposure to asbestos. Unlike the majority of appellants in the cases of *Taylor* and *Randt*, Mr. Lonasco suffered from none of the non-asbestos-related ailments commonly associated with shortness of breath. Although Mr. Lonasco smoked for a portion of his life, the parties' medical experts testified that Mr. Lonasco suffered no damage from his previous smoking habit. Further unlike the appellants in *Taylor, supra,* the record

to their failure to file a cross-appeal raising this issue. Therefore, we shall apply post-*Simmons* law to our analysis.

does not indicate that Mr. Lonasco continues to lead an active, normal life. To the contrary, Mr. Lonasco can no longer engage in numerous physical activities that he once performed.

¶ 16 Apart from the dissimilarity of *Taylor* and *Randt* to the present case, this court has indicated that a diagnosis of asbestosis coupled with shortness of breath constitutes a symptomatic condition of asbestos exposure. In *McCauley v. Owens–Corning Fiberglas Corp.*, 715 A.2d 1125, 1131 (Pa.Super.1998), we recognized the *Taylor–Randt* holding that shortness of breath alone is not a compensable injury. However, we went on to state the following:

> [The appellant's] medical records, however, indicate that in addition to suffering shortness of breath he also suffered from asbestosis and other asbestos-related conditions (i.e. pleural plaques) in 1991–1992. In *Altiere v. Fibreboard Corp.*, 421 Pa.Super. 297, 617 A.2d 1302 (1992)(*en banc*), our court in *dicta* stated that where the plaintiff was experiencing pulmonary asbestosis and consequent shortness of breath, the plaintiff's disease was no longer considered asymptomatic. *Id.* at 299, 617 A.2d at 1303.
>
> Accordingly, asbestosis and shortness of breath, the condition and symptoms from which [the appellant's] medical records indicate he suffered in 1991 and 1992, were most likely not asymptomatic conditions of asbestos exposure. Rather, they can arguably be considered part of a separate and distinct disease which triggered the statute of limitations on a second action.

*McCauley*, 715 A.2d at 1131.

¶ 17 Like the appellant in *McCauley v. Owens–Corning Fiberglas Corp.*, *supra*, Mr. Lonasco suffers shortness of breath in addition to asbestosis and asbestos-related conditions. In addition, plaintiffs'/appellees' medical expert testified that Mr. Lonasco's shortness of breath is a result of his asbestos exposure. Although Owens–Corning and Garlock cite to contradictory testimony given by their medical expert, "a jury is entitled to believe all, part or none of the evidence presented." *Martin v. Evans*, 551 Pa. 496, 505, 711 A.2d 458, 463 (1998) (citation omitted). In addition, "a jury can believe any part of a witness' testimony that they choose, and may disregard any portion of the testimony that they disbelieve." *Id.* Herein, the jury properly exercised its discretion and chose to believe the evidence presented by plaintiffs/appellees. Viewing the evidence and all reasonable inferences in the light most favorable to plaintiffs/appellees, we find that the verdict was supported by the evidence. Furthermore, neither Owens–Corning nor Garlock were entitled to judgment as a matter of law. Accordingly, the trial court properly exercised its discretion by denying the j.n.o.v.

### *Phase II of the Trial*

¶ 18 Next, we address Garlock's allegation that the trial court erred by granting a new trial on Garlock's liability with respect to both plaintiffs/appellees and the Collins-plaintiffs. Garlock argues that both plaintiffs/appellees and the Collins-plaintiffs failed to set forth a prima facie case during Phase II. Garlock supports this argument by alleging that the testimony of the medical expert used by both plaintiffs/appellees and the Collins-plaintiffs, Doctor Epstein, was inconsistent and based upon speculation. In addition, Garlock argues that its asbestos-containing products used by both Mr. Lonasco and Mr. Collins do not produce sufficient fibers to create significant health hazards. When faced with a challenge to a trial court's decision to grant a new trial,

> Our standard of review for … [such a decision] … is limited to those reasons upon which the trial court relied. We consider whether any of the trial court's reasons for granting a new trial have merit; if so, we defer to the trial court's decision. Because the trial court is uniquely qualified to evaluate factual

matters, we will not disturb its decision absent an abuse of discretion or error of law.

*Burnhauser v. Bumberger*, 745 A.2d 1256, 1260 (Pa.Super.2000) (citations omitted).

¶ 19 When reviewing Garlock's motion for a directed verdict, the trial court was governed by the following standard of review:

A motion for a directed verdict admits as true all facts and proper inferences from testimony which tend to support the opposing party's case, and rejects all testimony and inferences to the contrary. Such a motion can properly be granted by a court only if the facts are clear and free from doubt. On a motion for directed verdict, the trial court must consider the facts in the light most favorable to the party against whom the motion is being made. It is not within the province of the trial court to weigh conflicting evidence when ruling upon a motion for directed verdict as credibility is a jury question.

*Lilley v. Johns–Manville Corp.*, 408 Pa.Super. 83, 596 A.2d 203, 213 (1991) (citations omitted throughout). In addressing both plaintiffs'/appellees' and Owens–Corning's post-trial motions, the trial court determined that it had erred in granting a directed verdict in favor of Garlock during Phase II. In reaching its conclusion, the trial court determined that plaintiffs/appellees and the Collins-plaintiffs had set forth a prima facie case pursuant to the requirements of *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50 (1988), *appeal denied*, 520 Pa. 605, 553 A.2d 968 (1988). The trial court held that the issue of liability emanating from Mr. Lonasco's and Mr. Collins' exposure to asbestos from Garlock's products was a matter for the jury to decide.

¶ 20 Garlock's argument that the testimony of plaintiffs'/appellees' and the Collins-plaintiffs' medical expert was based on mere speculation is an overstated assertion that ignores the overall context of his testimony. Doctor Epstein clearly testified that asbestos can cause numerous pulmonary ailments such as pleural thickening, shortness of breath, asbestosis and mesothelioma. When asked about the role played by asbestos fibers and the causation of asbestos-related ailments and conditions, Doctor Epstein testified that "it's my professional opinion that all of those [asbestos] fibers can cause all of these changes in the body." (N.T. 10/28/96, at 82). Doctor Epstein expounded upon this opinion to a reasonable degree of medical certainty in the following manner:

In my professional opinion, each exposure to asbestos that has taken place before the latency period that we've talked about; in other words, anything before the recognized latency period, has, in my professional opinion, been a substantial, contributing cause of each of these conditions, whether they be diseases or conditions, as we've discussed them.

(N.T. 10/28/96, at 83). Clearly, Doctor Epstein's opinion concerning the role played by asbestos in the causation of the asbestos-related conditions found in both Mr. Lonasco and Mr. Collins was not based on mere speculation. However, concerning the specific role played by individual asbestos fibers, Doctor Epstein testified to the following:

Well, unfortunately, we can't follow every single fiber into the body and tell which cell it has come in contact with in [*sic*] the body, so there's no way of telling whether a specific fiber has caused a specific abnormality .... so we must make the assumption that each of the fibers has taken some part in the disease process that we are looking at or in the change we're looking at, within the body.

(N.T. 10/28/96, at 82–83).

¶ 21 Our case law includes no requirement that a plaintiff in an asbestos case establish the specific role played by each individual asbestos fiber within the body after inhalation. "Instead, in order

to make out a prima facie case, it is well established that the plaintiff must present evidence that he inhaled asbestos fibers shed by the specific manufacturer's product." *Junge v. Garlock, Inc.*, 427 Pa.Super. 592, 629 A.2d 1027, 1029 (1993), *appeal denied*, 537 Pa. 610, 641 A.2d 310 (1994) (citing *Eckenrod*, 544 A.2d at 53). "A plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use." *Id.*

¶ 22 At trial, Mr. Lonasco testified that for eight hours a day during a period spanning approximately one month to five weeks, he utilized asbestos-containing gaskets manufactured by Garlock. Mr. Lonasco further testified that his duties required him to cut strings and punch many holes into these gaskets which created large amounts of dust that he inhaled. Mr. Lonasco's duties also included cleaning heaters that contained Garlock gaskets, and that this activity also created dust that Mr. Lonasco inhaled. Moreover, the jury was presented with the expert testimony of Doctor Epstein who opined to a reasonable degree of medical certainty that the inhalation of asbestos fibers can cause asbestosis, pleural thickening, pleural plaques and shortness of breath. Clearly, plaintiffs/appellees set forth a prima facie case pursuant to the requirements of *Junge, supra*, and *Eckenrod, supra*.

¶ 23 Mr. Collins testified at trial that he worked for Philadelphia Electric Company ("PECO") from 1947 through 1975. While working for PECO's maintenance department as a steamfitter's helper and a pipe fitter's helper, Mr. Collins routinely worked on pipelines and replaced asbestos-containing gaskets manufactured by Garlock. In addition to replacing these gaskets, Mr. Collins also cut gaskets and packed valves. Mr. Collins testified that his work with Garlock gaskets created dust that he inhaled. Mr. Collins' testimony coupled with that of Doctor Epstein clearly set forth a prima facie case pursuant to the requirements of *Junge, supra*, and *Eckenrod, supra*.

¶ 24 Garlock further supports this argument by asserting that Doctor Epstein contradicted himself on cross-examination. In addition, Garlock cites to the testimony of its medical expert as well as its industrial hygienist who testified that the use and handling of Garlock's asbestos-containing gaskets does not create any significant hazard or risk due to a low level of fiber emissions. Although persuasive, this additional support cited by Garlock only creates a credibility contest between the parties' experts. *See Martin, supra* (a jury is entitled to believe all, part or none of the evidence presented, including any part of a witness' testimony). As stated above, plaintiffs/appellees and the Collins-plaintiffs have met their prima facie burden of proof against Garlock and are entitled to present their claims to a jury. *See Junge, supra.* Moreover, when reviewing Garlock's motion for a directed verdict, the trial court was constrained to regard all facts and testimony set forth by plaintiffs/appellees and the Collins-plaintiffs as true and reject any testimony and inferences to the contrary. Therefore, we agree with the trial court's determination that it erred in granting Garlock's directed verdict, and find that the trial court properly exercised its discretion in ordering a new Phase II trial as to Garlock's liability.[4]

4. Our disposition of this issue has rendered premature the argument of both Owens–Corning and Garlock that the trial court erred in failing to order a remittitur or new trial as to Phase I since the damages awarded to plaintiffs/appellees were shockingly excessive. Pursuant to our reasoning in *Giordano v. A.C. & S. Inc.*, 446 Pa.Super. 232, 666 A.2d 710 (1995), it is proper to consider the question of excessiveness from the perspective of the size of the judgments which Owens–Corning and Garlock must pay, not the size of the verdict rendered. "Asbestos cases are based on products liability theory, which seeks to best apportion the cost of injuries caused by defective products on the manufacturers who can and should bear those costs." *Giordano*, 666 A.2d at 714 n. 2. Since the questions of Garlock's liability and portion of the verdict for which Garlock may be responsible have yet to

¶ 25 Finally, we address Owens–Corning's argument that plaintiffs/appellees failed to prove a prima facie strict liability case against Owens–Corning by failing to establish that the alleged failure to warn was a proximate cause of the injuries alleged. Specifically, Owens–Corning asserts that there was no proof that Mr. Lonasco would have avoided asbestos products had Mr. Lonasco received warnings of potential dangers associated with exposure. We find this argument without merit.

¶ 26 "[I]n cases where warnings or instructions are required to make a product non-defective and a warning has not been given, the plaintiff should be afforded the use of the presumption that he or she would have followed an adequate warning; and that the defendant, in order to rebut that presumption, must produce evidence that such a warning would not have been heeded." *Coward v. Owens–Corning Fiberglas Corp.*, 729 A.2d 614, 621 (Pa.Super.1999), *appeal granted*, 560 Pa. 705, 743 A.2d 920 (1999). "If the defendant produces evidence that the injured plaintiff 'was fully aware of the risk of bodily injury, or the extent to which his conduct could contribute to that risk,' the presumption is rebutted and the burden of production shifts back to the plaintiff to produce evidence that he would have acted to avoid the underlying hazard had the defendant provided an adequate warning." *Coward*, 729 A.2d at 622 (quoting *Pavlik v. Lane Limited/Tobacco Exporters International*, 135 F.3d 876, 883 (3d Cir.1998)). Herein, Owens–Corning made no attempt to rebut the presumption afforded plaintiffs/appellees. In particular, Owens–Corning produced no evidence bearing upon Mr. Lonasco's knowledge of the risk of injury posed by inhalation of asbestos. Accordingly, the burden of production did not shift back to plaintiffs/appellees. Thus, appellees/plaintiffs did not fail in proving a prima facie case against Owens–Corning.

¶ 27 For the foregoing reasons, we affirm the orders of the trial court.

¶ 28 Orders affirmed. Case remanded. Jurisdiction relinquished.

---

be decided, the question of excessiveness is not ripe for appellate review.

Likewise, we find unripe for appellate review the argument of both Owens–Corning and Garlock that the trial court erred by failing to mold the liability verdicts to include a pro-rata liability share attributable to Johns–Manville Corporation through the Manville Personal Injury Settlement Trust.

Since a new trial as to Garlock's liability has been ordered, the number of defendants liable for the verdict remains uncertain. Therefore, this argument concerning the pro-rata share attributable to Johns–Manville Corporation is inappropriate for appellate review since the total number of defendants liable for the verdict has yet to be established.