Linda McNEAL, Administratrix of the
Estate of James R. McNeal, Jr.,
Deceased, Appellant,

v.

EATON CORPORATION, as Suc-
cessor–in–Interest to Cutler–
Hammer, Inc., Appellee.

Superior Court of Pennsylvania.

Submitted May 20, 2002.

Filed Sept. 3, 2002.

**900**

Edward M. Garrigan–Nass, Philadelphia, for appellant.

Cy Goldberg, Philadelphia, for Cutler–Hammer, appellee.

Stewart R. Singer, Philadelphia, for Allied Corp., appellee.

Before: LALLY–GREEN, BECK and POPOVICH, JJ.

OPINION BY POPOVICH, J.

¶ 1 Appellant Linda McNeal appeals from the entry of summary judgment in favor of Appellee Eaton Corporation, on November 5, 2001, in the Court of Common Pleas of Philadelphia County. Upon review, we reverse.

¶ 2 The facts and procedural history are as follows: On November 24, 1999, James R. McNeal, Jr., (Decedent) filed a complaint to recover for damages resulting from his exposure to asbestos. Decedent alleged that he suffered symptomatic asbestosis due to the products of numerous product manufacturers that utilized asbestos in their products, including Appellee Eaton Corporation, successor-in-interest to Cutler–Hammer, Inc.[1] Decedent was diagnosed with symptomatic pulmonary asbestosis and asbestos-related pleural disease on April 27, 1999. Decedent died on March 4, 2000, of non-asbestos-related causes. His wife, Linda McNeal, Appellant herein, continued the suit as administratrix of his estate. At a deposition held on September 21, 2001, Decedent's co-worker, Richard Izykowski (Izykowski), testified that he and Decedent worked together frequently while employed at the Budd Company's Hunting Park Avenue plant from 1963 through the 1970's. Izykowski testified that he and Decedent were involved in the manufacture of automobile chassis and other steel-based component parts. Izykowski testified that he and Decedent worked together regularly and frequently under the multiple overhead cranes that were in continuous operation at the plant. Izykowski saw the brakes on the cranes being replaced multiple times, and during their installation he noticed the company names "Cutler–Hammer" and "Clark Control" with the word "asbestos" on the crates containing the brakes. Izykowski testified that these brakes were positioned on cranes approximately 25 feet above the workers' heads,

---

1. We note that the notice of appeal in this case is filed as *Linda McNeal, Administratrix of the Estate of James R. McNeal, Jr., deceased, Appellant v. Owens–Corning Fiberglas Corp., et al., Appellees,* 3 EDA 2002. However, Appellant only appeals the entry of summary judgment on behalf of Eaton Corpora-

tion, successor-in-interest to Cutler–Hammer, Inc. Therefore, the appropriate caption of this case is *Linda McNeal, Administratrix of the Estate of James R. McNeal, Jr., deceased, Appellant v. Eaton Corporation, as successor-in-interest to Cutler–Hammer Inc.*

and during their operation, white asbestos dust fell onto the floor and onto the workers, including Izykowski and Decedent.

■ ¶3 Following Izykowski's deposition, summary judgment was granted against several defendant-corporations on separate orders filed September 27, 2001, and October 11, 2001. Summary judgment was entered in favor of Appellee on November 5, 2001. That same day, the trial court issued an order settling the case as to all non-bankrupt parties.[2] Appellant filed a timely appeal to this Court on November 29, 2001. The trial court did not order Appellant to file a Pa.R.A.P.1925(b) statement of matters complained of on appeal, but, nevertheless, it authored an opinion in this case.

¶4 Appellant presents the following questions for our review:

(1) Whether under the proper standards, [Appellant] presented sufficient evidence to establish liability and to defeat summary judgment.

(2) Whether the trial court employed an improper analysis for establishing liability in an asbestos-related personal injury action?

(3) Whether the court failed to consider the evidence in a light most favorable to [Appellant]?

(4) Whether the court improperly determined a question of fact?

Appellant's brief at 2.[3]

¶5 Appellant's claims are all challenges to the propriety of the lower court's entry of summary judgment in favor of Appellee. At the outset, we note that our standard of review on appeals from an entry of summary judgment was recently enunciated in *Gutteridge v. A.P. Green Services, Inc.,* 2002 PA Super 198, 804 A.2d 643 (Pa.Super.2002). In *Gutteridge,* we held:

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Capek v. Devito,* 564 Pa. 267, 270 n. 1, 767 A.2d 1047, 1048 n. 1 (2001). The moving party has the burden of proving that no genuine issues of material fact exist. *Rush v. Philadelphia Newspapers Inc.,* 1999 PA Super 141, 732 A.2d 648, 650 (Pa.Super.1999). In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Potter v. Herman,* 2000 PA Super 345, 762 A.2d 1116, 1117–18 (Pa.Super.2000). Thus, summary judgment is proper only when the uncontraverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *Id.* at 1117. In sum, only when the facts are so clear that reasonable

2. We note that a trial court order declaring a case settled as to all remaining parties renders prior grants of summary judgment final for purposes of Pa.R.A.P. 341, even if the prior orders entered disposed of fewer than all claims against all parties. *Baker v. Cambridge Chase, Inc.,* 725 A.2d 757, 762 (Pa.Super.1999); *see also Prelude, Inc. v. Jorcyk,* 695 A.2d 422, 423 (Pa.Super.1997) *(en banc)* (concluding that otherwise proper appeal proceedings may go forward against non-bankrupt parties). Accordingly, the present appeal is from a final order and is properly before this Court.

3. For the sake of organization within this opinion, we have renumbered Appellant's questions for review.

minds cannot differ, may a trial court properly enter summary judgment. *Basile v. H & R Block, Inc.*, 563 Pa. 359, 365, 761 A.2d 1115, 1118 (2000). As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. *Potter,* 762 A.2d at 1118. With regard to questions of law, an appellate court's scope of review is plenary. *Capek,* 564 Pa. at 270 n. 1, 767 A.2d at 1048 n. 1. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. *Potter, supra.* *Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration. Lachat v. Hinchliffe,* 2001 PA Super 50, 769 A.2d 481, 487 (Pa.Super.2001).

*Gutteridge,* 2002 Pa. Super 198 at 9, 804 A.2d 643 (emphasis in original).

¶ 6 We consider whether Appellant presented sufficient evidence to establish liability and to defeat summary judgment. In *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50 (1988), we held that in order for a plaintiff to survive a motion for summary judgment in an asbestos products liability case, the plaintiff must meet the following standard:

> In order for liability to attach in a products liability action, plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury.

*Eckenrod,* 544 A.2d at 52 (citations omitted).

¶ 7 We further held in *Eckenrod:*

> Whether direct or circumstantial evidence is relied upon, our inquiry, under a motion for summary judgment, must be whether plaintiff has pointed to sufficient material facts in the record to indicate that there is a genuine issue of material fact as to the causation of decedent's disease by the product of each particular defendant. Whether a plaintiff could successfully get to the jury or defeat a motion for summary judgment by showing circumstantial evidence depends upon the frequency of the use of the product and the regularity of plaintiff's employment in proximity thereto.

*Eckenrod,* 544 A.2d at 53 (citations omitted).

¶ 8 Here, the trial court applied *Eckenrod* to reach the conclusions that Izykowski's testimony neither established that dust particles were emitted from a product that contained asbestos nor that Decedent inhaled any asbestos particles. Trial Court Opinion at 4. This application of *Eckenrod* is erroneous. As we held in *Gutteridge:*

> Our case law includes no requirement that a plaintiff who suffers a compensable asbestos related injury must establish the specific role played by each individual asbestos fiber within the body. *Lonasco v. A–Best Products Co.,* 2000 PA Super 203, 757 A.2d 367, 375 (Pa.Super.2000), *appeal denied,* 566 Pa. 645, 781 A.2d 145 (2001). "Instead, in order to make out a *prima facie* case, it is well established that the plaintiff must present evidence that he inhaled asbestos fibers shed by the specific manufactur-

er's product." *Lonasco,* 2000 PA Super 203, 757 A.2d 367 at 375–76 (italics added). However, the plaintiff must establish more than the mere presence of asbestos in the workplace; he must prove that he worked in a vicinity in which a specific manufacturer's product was used. *Lonasco,* 2000 PA Super 203, 757 A.2d 367 at 376. The nexus between a specific asbestos product and a plaintiff's medical condition may be supplied by a variety of direct and circumstantial evidence. *Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 596 A.2d 203, 207 (1991), *appeal denied,* 530 Pa. 644, 607 A.2d 254 (1992). The testimony of any witness with knowledge regarding the plaintiff's workplace and his or her exposure to a defendant's asbestos-containing products is admissible when probative. *Id.* [...] However, even when the plaintiff himself cannot identify specific products manufactured by asbestos defendants, the testimony of co-workers is admissible to establish that he worked in close proximity to the asbestos products in question. *See, e.g., Taylor v. Celotex Corp.,* 393 Pa.Super. 566, 574 A.2d 1084, 1091–92 (Pa.Super.1990).

*Gutteridge,* 2002 PA Super 198 at 15, 804 A.2d 643.

■ ¶ 9 This case is analogous to *Gutteridge* because in both cases, the person who inhaled the asbestos died before he could be deposed. Therefore, a co-worker testified on behalf of his estate. In *Gutteridge,* Frank Corvino's (co-worker) testimony established that he worked at the same employer as Gutteridge from 1952 until 1984. *Gutteridge,* 2002 PA Super 198 at 16, 804 A.2d 643. Corvino used asbestos products at that location, sanded them and produced asbestos dust in the process. Gutteridge, a telephone worker, worked in proximity to Corvino between 1970 and 1977. Over objection, Corvino testified that it was impossible for someone to have been in his vicinity at work between 1970 and 1977 and not to have inhaled asbestos dust. *Id.,* 2002 PA Super 198 at 16, 804 A.2d 643. Corvino had no memory of Gutteridge, but he recalled working with another telephone worker named Alfonso Holloway, with whom Gutteridge worked regularly, and stated that Holloway and anyone working at his side would have been exposed to the asbestos products and asbestos dust. *Id.,* 2002 PA Super 198 at 17, 804 A.2d 643. Accordingly, we reversed the grant of summary judgment by the trial court, finding that the depositions and affidavits created a genuine issue of material fact for the jury. *Id.,* 2002 PA Super 198 at 16–18, 804 A.2d 643.

■ ¶ 10 Here, as in *Gutteridge,* Decedent died before he was deposed. Therefore, it became necessary for one of Decedent's co-workers at the Budd Company to testify as to the frequency of the use of the product and the regularity of Decedent's employment in proximity thereto.[4] Izykowski, a research mechanic and "pressman," often worked with Decedent, a welder, due to their level of seniority. Izykowski deposition, 9/18/2001, at 13–14. Izykowski testified that he, Decedent and the other workers were exposed to asbestos at the Budd Company because of its use in press brakes, pipe coverings and

---

4. We note that the official record does not include the transcript of Izykowski's deposition. It is the Appellant's responsibility to provide a complete record on appeal, including requesting the transcription of testimony germane to the appeal. *See Commonwealth v. Williams,* 552 Pa. 451, 715 A.2d 1101 (1998). Nevertheless, our review of this matter is not hampered because Appellant has placed the entire transcript of Izykowski's deposition in her version of the reproduced record, and Appellee has cited to this deposition within its brief. We find Appellee's use of the reproduced transcript is a tacit agreement of its authenticity. Therefore, we will address the merits of the issues on appeal.

crane brakes. *Id.* at 16. He testified that the boxes that were used to transport the crane brakes before they were installed bore the corporate label of Cutler–Hammer, Inc., and the boxes indicated that the crane brakes were made with or contained asbestos. *Id.* at 42–43. Izykowski testified that a white, powdery dust fell from the crane brakes when the brakes were applied. *Id.* at 59–60. Izykowski characterized this dust as asbestos. *Id.* at 59. Izykowski's testimony also characterized the cranes as having been in constant stop-and-go motion, braking repetitively. *Id.* at 44. According to Izykowski, these cranes were approximately 25 feet overhead and Decedent frequently worked under them because they were impossible to avoid. *Id.* at 42, 45. He also testified that the dust emanating from the brakes was so pervasive the workers were forced to dust off their lunch bags and wipe off the machinery with kerosene-soaked rags to clean off the dust. *Id.* at 45.

■ ¶ 11 Comparing the present case to *Gutteridge,* we found that testimony from Gutteridge's co-workers was sufficient to show that a question of material fact existed, and, consequently, summary judgment was improper. *Gutteridge,* 2002 Pa Super 198 at 17–18, 804 A.2d 643. Here, as was the case in *Gutteridge,* Izykowski testified that he and Decedent worked together regularly over a span of years, were both in contact with dust from the crane brakes frequently and were in proximity to the asbestos product. For purposes of surviving a motion of summary judgment, it is of no matter whether Izykowski's testimony that the dust from the brakes contained asbestos is true because that type of determination is a question of fact to be weighed by a jury. *See White v. Owens–Corning Fiberglas Corp.,* 447 Pa.Super. 5, 668 A.2d 136, 142 (1995) (holding that however clear and indisputable the proof may be when it depends on oral testimony, it is nevertheless the province of the jury to

decide the law applicable to the facts). The credibility of a witness is a determination for the jury and necessarily creates a genuine issue of material fact. *Id.,* 668 A.2d at 142.

¶ 12 Appellee argues that our holding in *Fiffick v. GAF Corp.,* 412 Pa.Super. 261, 603 A.2d 208 (1992), mandates that we find the "mere presence" of asbestos in the workplace is insufficient to defeat a summary judgment motion. Appellee's reliance on *Fiffick* is misplaced. In *Fiffick,* Fiffick was unable to demonstrate that he was exposed to asbestos fibers from the defendant's product. *Fiffick,* 603 A.2d at 210–211. Therefore, Fiffick argued that his exposure to asbestos could have been inferred because asbestos fibers drift far from their point of origin after they have been released into the air. *Id.,* 603 A.2d at 211. We found that Fiffick failed to allege evidence of when appellee's product had been used, where it had been used, how frequently it had been used or his proximity to the asbestos product. *Id.,* 603 A.2d at 211. We found the motion for summary judgment could not be defeated by a mere showing that Owens–Corning's product had been present in a large steel plant at unspecified times and in unquantifiable amounts. *Id.,* 603 A.2d at 211. Therefore, in the *Fiffick* case, the entry of summary judgment by the trial court was proper. *Id.,* 603 A.2d at 211.

¶ 13 This case differs significantly from *Fiffick.* Here, as shown above, Izykowski's testimony produced sufficient facts to demonstrate the elements necessary to defeat a motion for summary judgment. His testimony indicated that he and Decedent were regularly in the vicinity of Appellee's asbestos product and that the asbestos product was in continuous use at the plant during the time in question. *See Taylor v. Celotex Corp.,* 574 A.2d at 1091–1092 (holding that sufficient nexus between exposure to asbestos and manufacturer's product

may be shown through testimony of co-workers that establishes that plaintiff worked with, or was in the vicinity of, a manufacturer's asbestos product). Therefore, under the facts of the present case, we are unable to agree that Appellee has satisfied its burden of proving that no genuine issues of material fact exist. *See Potter v. Herman,* 762 A.2d at 1117–18 (explaining that all doubts regarding the existence of a genuine issue of material fact must be resolved against the moving party).

¶ 14 Accordingly, we reverse the entry of summary judgment in favor of Appellee Eaton Corporation.[5]

¶ 15 Judgment reversed.

¶ 16 BECK, J. notes dissent.

---

5. Because we find Appellant's first issue dispositive in our decision whether to reverse the lower court's order of summary judgment, we do not address the merits of Appellant's remaining claims.