## Urbach v. Flintkote Company

C.P. of Philadelphia County, August Term 2003, no. 2638.

*Steven B. Barrett,* for plaintiffs.

*William A. Jones, Christopher N. Santoro, G. Daniel Bruch Jr., Mark A. Lockett, Bashi Buba, Robert C. Anderson, William D. Shultz, John J. Kurowski, Wilson M. Brown III, Michael P. Daly* and *David S. Abernethy,* for defendants.

DiBONA JR., *J.,* December 15, 2005—The plaintiff brought this action against the defendants for alleged injuries sustained by the plaintiff from his use of and exposure to defendants' asbestos products. This court,

sitting with a jury, conducted a trial from February 7, 2005 through February 18, 2005. The jury found in favor of the plaintiff, James Urbach, and against the defendants, Kentile Floors Inc. and American Biltrite Inc. (Amtico), jointly and severally, in the amount of $5,000,000. The plaintiff's offer of remittitur to $1,750,000 was accepted by this court in its grant of judgment.[1] The jury also found in favor of defendant Azrock Industries Inc.[2] This case was reverse bifurcated.[3] Kentile and Amtico have filed timely separate appeals with the Superior Court. This opinion will address both appeals.

In response to this court's order pursuant to Pa.R.A.P. 1925(b) dated August 30, 2005, each of the defendants has filed a statement of matters complained of on appeal. However, neither of the defendants has filed a *concise* statement[4] as Pa.R.A.P. 1925(b) requires. Therefore, this court will set forth the issues essentially raised in each of the statements.

---

1. This court's order dated August 1, 2005, finding in favor of both plaintiffs was a clerical error. After the plaintiffs rested their case on February 10, 2005, the defendants moved for a dismissal of Mrs. Urbach's claim for the loss of consortium. Mrs. Urbach did not testify and no evidence was presented by the plaintiffs to support a claim for loss of consortium. Accordingly, this court on February 10, 2005, at trial, dismissed Mrs. Urbach's claim. This court's order dated August 1, 2005, should have reflected that this court found in favor of Mr. Urbach *alone* in the amount of $1,750,000.

2. Defendant, The Flintkote Company, is bankrupt and no finding was made by the jury regarding it.

3. Reverse bifurcation in asbestos cases is a division of the case into two phases. In the first phase, the jury determines whether the plaintiff has been injured by exposure to asbestos and to what extent (amount of damages). In the second phase, the jury determines whether the defendant is liable for the plaintiff's injury.

4. The statement of Kentile is 19 pages long and reads like a brief. The statement of Amtico is six pages long.

## ISSUES PRESENTED

(1) Whether the statute of limitations had run on the plaintiff's asbestos-related injuries before he filed suit against the defendants.

(2) Whether the plaintiff produced sufficient evidence at trial to establish that he was injured and suffered disability from exposure to defendants' asbestos products to withstand defendants' motions for judgment non obstante veredicto or judgment notwithstanding the verdict (judgment n.o.v.).

(3) Whether defendants are entitled to a new trial on damages because the jury's verdict, even with the remittitur, was manifestly excessive and contrary to the weight of the evidence.

(4) Whether plaintiff's counsel's questions and comments during the course of the trial were so prejudicial to defendants as to require the grant of a new trial.

(5) Whether there was any rational basis for the jury to find that plaintiff was injured by defendants' asbestos products but not by defendant Azrock's asbestos products.

(6) Whether this court erred by ordering this trial to be conducted in reverse bifurcation fashion.

(7) Whether this court erred by consolidating this case with another asbestos case.

(8) Whether this court erred in refusing to instruct the jury on a determination of several rather than joint liability pursuant to the Fair Share Act, 42 Pa.C.S. §7102, since the Fair Share Act applies to actions that accrue on or after August 18, 2002, and the jury should have been permitted to determine whether plaintiff was injured after the effective date of the Fair Share Act.

## DISCUSSION

### Statute of Limitations

Defendants claim that plaintiff was aware of his "asbestos-related condition" as far back as July 18, 2000. Therefore, defendants assert that plaintiff filed his complaint after the two-year statute of limitations expired on this personal injury suit. However, throughout the trial and even to date, the defendants do not admit that the plaintiff suffers from asbestosis. Furthermore, the defendants deny that plaintiff suffers "any disability, impairment or discernible symptoms from his asbestos-related condition." If the defendants had admitted that the plaintiff suffers from asbestosis, this court could have instructed the jury to determine when the plaintiff contracted the disease and thus whether this action was brought within the statute of limitations. However, it is difficult to follow defendants' argument that plaintiff filed this action too long after he contracted the disease when the defendants do not admit he has asbestosis. Neither defendant produced an expert at trial to provide an opinion as to when plaintiff had discernible physical symptoms or functional impairment causally related to his pulmonary asbestosis.

The key event in the progression of plaintiff's asbestosis was the coronary artery bypass heart surgery that plaintiff had in the summer of 2002 after which his physical limitations and overall health markedly changed. He required the use of oxygen on a daily basis, could not walk from one room to another in his house, needed a wheel chair in order to ambulate, could not bathe or dress himself independently without losing his breath, could no longer drive a car and needed assistance walking up

one flight of stairs in his home. The evidence clearly establishes that the plaintiff did not suffer from a compensable injury until after August 15, 2001.[5] Accordingly, plaintiff filed this action timely.

*Sufficiency of Evidence To Prove Asbestosis*

This court enumerated above the symptoms which have manifested themselves in plaintiff that, in the eyes of the jury, made plaintiff's asbestosis not asymptomatic but symptomatic because these symptoms produced a decided change in plaintiff's daily lifestyle.

In the case of *Cauthorn v. Owens-Corning Fiberglas Corp.,* 840 A.2d 1028 (Pa. Super. 2004), the Superior Court tackled the thorny issue in asbestos injury cases as to whether the symptoms the plaintiff complains of are related to his exposure to asbestos or to one of the other maladies from which the plaintiff suffers, or, phrased another way, whether plaintiff suffers from a compensable asbestos-related disease. The Superior Court said at pages 1035-39:

"What constitutes a compensable asbestos-related injury?

"Appellant argues that plaintiff failed to prove that he suffered from a symptomatic asbestos-related disease. If appellant is correct in this assertion, it would be entitled to the judgment n.o.v. it seeks. This is because in the Commonwealth, it is no longer possible for a plaintiff to recover for 'asymptomatic asbestos-related injuries.' *Giffear v. Johns-Manville Corp.,* 429 Pa. Super. 327, 632 A.2d 880 (1993).

---

5. Plaintiff filed his complaint on August 15, 2003.

"A plaintiff's asbestos-related injuries are 'asymptomatic' when it can be objectively demonstrated that plaintiff has been injured by asbestos exposure, but the injuries are unaccompanied by 'discernible physical symptoms or functional impairment.' *Id.* at [337, 632 A.2d at] 885. Thus, even though the plaintiff has shown by an x-ray photograph that he is suffering from asbestosis, he will be unable to recover for this injury unless his asbestosis manifests itself in some outward form. When the plaintiff is 'able to lead [an] active, normal [life], with no pain or suffering, no loss of organ function, and no disfigurement due to scarring,' that plaintiff may not recover for his asbestos-related injuries as a matter of law. *Id.* at [335, 632 A.2d at] 884.

"If the plaintiff can prove that his asbestos-related disease has led to 'discernible physical symptoms or functional impairment,' plaintiff has proven that his asbestos-related disease is 'symptomatic' and thus compensable under *Giffear.* What constitutes a 'discernible physical symptom or functional impairment' has, however, been debated in the Superior Court.

"Some of the cases decided after *Giffear* have held that an asbestos-related disease which is only accompanied by shortness of breath is still an asymptomatic disease. In *Taylor v. Owens-Corning Fiberglas Corp.,* the Superior Court declared: 'it is common knowledge that breathlessness is also associated with any number of non-asbestos-related ailments including lung cancer, excessive cigarette smoking, heart disease, obesity, asthma, emphysema and allergic reactions.' 446 Pa. Super. 174, 187 n.2, 666 A.2d 681, 687 n.2 (1995). *Taylor* would require something more than shortness of breath before the plaintiff could establish that his asbestos-related injuries were symptomatic.

"In *White v. Owens-Corning Fiberglas Corp.*, the court elaborated on what 'more' is required before the plaintiff can establish a compensable asbestos-related injury. 447 Pa. Super. 5, 668 A.2d 136 (1995). In this case, the plaintiff was diagnosed with asbestos-related pulmonary diseases. The *White* court reiterated its statement that asbestos-related injuries which are only outwardly manifested in shortness of breath do not constitute a compensable injury under *Giffear.* Mr. White, however, also testified that he 'had severe difficulties breathing after walking more than half a block, climbing a flight of stairs, driving a nail, or washing the dishes.' This testimony, the court found, demonstrated that Mr. White has 'discernible physical symptoms, a functional impairment or disability' under *Giffear. White* [at 25,] 668 A.2d at 146.

"Thus, it was the testimony showing plaintiff's shortness of breath hampered his daily activities (along with evidence demonstrating a causal connection between his shortness of breath, asbestos exposure, and asbestos-related lung injuries) which enabled plaintiff to satisfy his burden of production and established a prima facie case of symptomatic (and therefore compensable) asbestos-related injuries.

"Another line of Superior Court cases has found symptomatic asbestos-related injuries when plaintiff establishes: (1) an asbestos-related condition, (2) shortness of breath, and (3) a causal connection between the two. *McCauley v. Owens-Corning Fiberglas Corp.* is one such case. 715 A.2d 1125 (Pa. Super. 1998).

"It could be argued that since *McCauley* applied pre-*Giffear* law, thus allowing a plaintiff to recover for asymptomatic asbestos-related injuries, it is of no account to our current case. *Id.* at 1128. This assertion would be

incorrect, however, since *the* McCauley *court found that the statute of limitations had run on Mr. McCauley's asymptomatic pleural thickening claim. Thus, the court was forced to determine whether his asbestos-related injuries had turned symptomatic. If the injuries had become symptomatic, the court declared Mr. McCauley would be suffering from a 'separate and distinct disease' and would be able to bring suit on these new symptomatic injuries. Id.* at 1129. Therefore, *McCauley* does inform our determination of *when a plaintiff's injuries become symptomatic.*

"The *McCauley* court was aware of *Taylor* and cited it for the proposition that shortness of breath alone 'is not considered a compensable injury.' *Id.* at 1131. The court then went on to say that 'in addition to suffering shortness of breath [Mr. McCauley] also suffered from asbestosis and other asbestos-related conditions (*i.e.,* pleural plaques).' *Id.* The *Taylor/White* court, however, would have required at least one more factor: that plaintiff's shortness of breath somehow affects his lifestyle. But the *McCauley* court did not require this further condition: it just required a causal connection between a plaintiff's shortness of breath and his asbestos-related diseases. Further, in *McCauley* there is no talk of any other non-asbestos-related ailments that would have affected his breathing, such as found in *Taylor* and *White.*

"The *McCauley* reasoning was followed in *Ryan v. Asbestos Corporation Ltd.,* 829 A.2d 686 (Pa. Super. 2003). *Ryan* found that *Taylor* merely stood for the fact that 'shortness of breath, without any evidence that the shortness was caused by asbestosis, is not a compensable injury.' *Id.* at 689. The *Ryan* court then declared: 'where the symptom of shortness of breath is causally related to

a diagnosis of asbestos, a compensable injury does in fact exist.' *Id.*

"Under either of the above approaches, Mr. Cauthorn has established that his asbestos-related injuries are symptomatic. When viewing the evidence in the light most favorable to Mr. Cauthorn, it demonstrates that he is suffering from asbestosis and pleural thickening—his expert testified as to this. Second, his expert testified that these injuries were proximately caused by Mr. Cauthorn's inhalation of asbestos. Third, Mr. Cauthorn testified that he suffers from shortness of breath. Fourth, Mr. Cauthorn's expert testified that, while Mr. Cauthorn suffers from a myriad of other health problems, Mr. Cauthorn's shortness of breath is due in part to his inhalation of asbestos and his asbestos-related injuries. Finally, and unlike the plaintiff in *Taylor,* Mr. Cauthorn testified that his shortness of breath harms his daily lifestyle. Specifically, Mr. Cauthorn testified that because of his shortness of breath he cannot walk more than a half a block and must drive everywhere he wishes to go. Thus, even under the *Taylor/White* analysis, Mr. Cauthorn has suffered a compensable injury from asbestos inhalation.

". . . In Mr. Cauthorn's case . . . the jury specifically found that Mr. Cauthorn was injured by inhalation of asbestos. *Our adversarial system allowed both sides to present their cases and attempt to sway the jury:* Mr. Cauthorn presented evidence that he was injured by asbestos and John Crane presented evidence that Mr. Cauthorn was injured, not by inhalation of asbestos, but rather by his cigarette smoking and other related ailments. The jury heard all of this and found that Mr. Cauthorn was indeed injured by asbestos exposure and awarded

him damages . . . John Crane's motion for judgment n.o.v. was properly denied.

"Issue 3: Whether John Crane is entitled to judgment n.o.v. because no reasonable jury could find on the evidence presented in this case that its products were defective or caused any injury to plaintiff?

"Appellant presents two separate questions here. First it alleges that, even if Mr. Cauthorn was exposed to its product, Mr. Cauthorn did not prove that its product was defective and thus cannot recover. Second, it argues that Mr. Cauthorn never proved that he was exposed to its products at all. We will separate these issues in our discussion.

"(A) Whether appellant is entitled to judgment n.o.v. because plaintiff failed to prove its products were defective.

"We agree with appellant that in an asbestos case where the plaintiff follows the 'design defect' avenue of strict liability, the plaintiff must prove that the asbestos-containing product was defective. Mr. Cauthorn, however, did prove that John Crane's asbestos rope was defective.

"Appellant's argument here is based primarily on the testimony of its industrial hygienist expert. Its asbestos rope was not defective, John Crane argues, because the expert testified that the rope emitted levels of respirable asbestos 'so low it's difficult to measure. So it would be less than the limited detection.'

"Our court was confronted with this argument in *Lonasco v. A-Best Products Co.,* 757 A.2d 367 (Pa. Super. 2000). Following the reasoning of *Lonasco,* appellant's claim must fail.

"Here, as in *Lonasco,* the plaintiff's medical expert testified as to the effect each fiber of asbestos causes in the human body. In the current case, Mr. Cauthorn's medical expert testified to a 'reasonable degree of medical certainty' that 'each breath of air that contained asbestos fibers substantially contributed to the development of [Mr. Cauthorn's] diseases.' Further, he testified: 'because any asbestos fiber will cause some degree of injury . . . each fiber will have some small effect and it's the cumulative effect of all the different fibers.'

"As in *Lonasco,* Mr. Cauthorn testified that when he cut John Crane asbestos rope, white dust would become airborne from the product. This dust, Mr. Cauthorn declared, he would breathe in. At the end of the day, Mr. Cauthorn stated that he would be covered in white dust. Further, when this white dust was being blown off of him, Mr. Cauthorn testified that the dust would recirculate causing him to breathe in even more dust.

"As to the testimony of John Crane's industrial hygienist concerning the levels of asbestos emitted from the rope, *'a jury can believe any part of a witness' testimony that they choose, and may disregard any portion of the testimony that they disbelieve.' Martin v. Evans,* 551 Pa. 496, 505, 711 A.2d 458, 463 (1998).

"Based on this evidence and following the reasoning of *Lonasco,* we cannot say that John Crane is entitled to judgment n.o.v. on the basis that Mr. Cauthorn did not prove its product was defective. The trial judge thus ruled correctly in denying this motion." (emphasis supplied)

Plaintiff testified at trial that he was exposed to the defendants' asbestos floor tile products and asbestos dust created by cutting, sweeping and tearing up defendants'

asbestos floor tile. Plaintiff testified that he broke up old asbestos floor tile and laid new asbestos floor tile and swept up asbestos dust in working with defendants' asbestos products. As a result, he breathed in the asbestos dust. This court finds that plaintiff proved by a preponderance of the evidence that he has a compensable asbestos-related disease.

## Remittitur or New Trial on Damages

This court does not believe that the jury's verdict was excessive or contrary to the weight of the evidence so as to have caused this court to overturn the jury's verdict. In the case of *Taylor v. Celotex Corp.,* 393 Pa. Super. 566, 574 A.2d 1084 (1990), the Superior Court held at pages 593-94, 574 A.2d at page 1098:

"Appellants also assert that the jury's award of damages to the plaintiffs was excessive and that, therefore, the trial court erred by refusing to order a remittitur. When faced with a claim that the jury's award of damages was excessive, we must be 'ever-mindful that our standard of review is extremely narrow.' . . .

"The determination of damages lies initially within the discretion of the jury, which weighs the evidence and assesses the credibility of the witnesses . . . The decision to grant or to deny a new trial on the ground of excessiveness lies, in turn, within the discretion of the trial court. We will not disturb the decision absent a clear abuse of that discretion . . . A verdict will stand unless its excessiveness shocks our sense of justice.

"Moreover, [t]he trial court has the authority to order a remittitur of excessive damages . . . However, the trial court should not interfere with functions of the jury and

undertake to determine facts, which is exclusively the province of the jury. When it is apparent that the jury has returned a verdict excessive in amount and clearly beyond what the evidence warrants, the trial court should set aside or reduce the verdict . . . Conversely, if the verdict is supported by evidence, it must be permitted to stand where there is nothing to suggest that the jury was in any way guided by partiality, prejudice, mistake or corruption . . . Therefore, it is the duty of the court to enforce the jury's verdict unless the circumstances cry out for judicial interference." (citations omitted)

See also, the case of *Andaloro v. Armstrong World Industries Inc.,* 799 A.2d 71 (Pa. Super. 2002), where the Superior Court said at pages 88-89:

"Finally, in its third question on appeal, Crane asserts that the trial court erred in refusing to grant remittitur on the verdict in the *Greenhalgh* and *Swan* cases . . . Again we conclude that this contention is of no merit and has been adequately addressed in the opinion of the trial court. The court stated the following rationale:

"Under prevailing case law authority, the court may only grant a remittitur when an award is so excessive that it shocks our sense of justice. See *Taylor v. Celotex Corp.,* 393 Pa. Super. 566, 574 A.2d 1084, 1098 (1990). To prevail on a petition for remittitur, it is incumbent upon the aggrieved party to establish that the verdict resulted from partiality, prejudice, mistake or corruption. . . .

"James *Greenhalgh suffers from pleural thickening and pulmonary asbestosis with lung scarring that has continued to deteriorate with the passage of time. Even the mildest exertion renders* Mr. Greenhalgh *short of breath,*

*curtailing his activities with family and even the simple pursuit of gardening. Given the continued deterioration of Greenhalgh's condition and the manner in which it limits his enjoyment of life, the trial court did not err in refusing to grant remittitur* of Greenhalgh's $800,000 award.

"Similarly, Ralph *Swan suffers from asbestosis and severe restrictive lung disease. Due to shortness of breath, he encounters difficulty even in tossing a ball with his grandchildren, and must stop to rest after walking only about one block. He lives in fear that his condition will deteriorate and result in his death. In view of the difficulty* Mr. Swan *sustains in daily living, we find no error in the trial court's refusal to grant remittitur* of his $750,000 award. Accordingly, we find no merit in John Crane's request for relief." (emphasis supplied)

This court does not find that the jury's award, given that plaintiff has testified about the severe restrictions, pain and suffering that he suffers from, due to his worsening pulmonary asbestosis, is so excessive that it shocks our sense of justice or that the jury was guided by partiality, prejudice, mistake or corruption. However, this court deemed it reasonable and appropriate to accept the plaintiff's offer of remittitur from the jury's award in the amount of $5,000,000 down to $1,750,000.

### *Plaintiff's Kentile and Amtico Product Identification*

Plaintiff testified through his deposition on March 24, 2004, which was read to the jury at trial, that he directly used the asbestos floor tile of both Kentile and Amtico over the 21-year period that he worked as a layer of as-

bestos floor tile. Plaintiff testified that he could distinguish the different manufacturer of asbestos floor tile by their appearance. As the Superior Court said in the case of *Cauthorn v. Owens Corning Fiberglas Corp., supra* at pages 1039-40:

"(B) Whether appellant is entitled to judgment n.o.v. because plaintiff failed to establish product identification.

"To establish product identification in an asbestos case, the plaintiff must prove that he inhaled asbestos fibers from that particular manufacturer's product. *Lilley v. Johns-Manville Corp.,* 408 Pa. Super. 83, 596 A.2d 203, 207 (1991). Thus, we have stated: '[a] plaintiff must establish more than the presence of asbestos in the workplace. He must prove that he worked in the vicinity of the product's use,' and that his contact with that particular product 'was of such a nature as to raise a reasonable inference that he inhaled asbestos fibers that emanated from it.' *Andaloro v. Armstrong World Industries,* 799 A.2d 71, 86 (Pa. Super. 2002).

"Viewing the evidence in the light most favorable to Mr. Cauthorn, he did just that. As stated above, Mr. Cauthorn testified that he worked consistently with two types of asbestos rope: John Crane and PARS. He knew this because he saw the names of both corporations on the packages of rope with the word 'asbestos' printed on the packages. With respect to the John Crane rope, he described it as packaged in 'boxes and it was on rolls, spools that you roll off, and it was in bags also.' This rope was white, not slick, pliable, and had to be cut with a knife. It was when he cut the rope with his knife that he would see the 'dust' coming from the rope. This dust he would then breathe in.

"On cross-examination it was elicited from the plaintiff that, at any given time, he did not know whether PARS or John Crane supplied the rope he was using. *We, however, do not expect a plaintiff to come in with a journal describing what asbestos product he used on a given day.* Mr. Cauthorn's description of the asbestos rope was specific and demonstrated that he worked consistently with John Crane rope. This testimony was 'of such a nature as to raise a reasonable inference that he inhaled asbestos fibers that emanated from John Crane's asbestos rope.

"While appellant cites to the testimony of George McKillop to establish that its rope did not have the particular composition that Mr. Cauthorn testified it did, such oral testimony seems to have been rejected by the jury. Such is the prerogative of the jury. *Commonwealth v. Harper,* 485 Pa. 572, 576-77, 403 A.2d 536, 538-39 (1979).

"Thus, it cannot be said that 'no two reasonable minds could disagree that the outcome should have been rendered in favor of [John Crane].' *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992)." (emphasis supplied)

This court believes that plaintiff has met his burden of proof on the identification of defendants' products as the source of his asbestosis.

## Cause for Grant of New Trial

The standard that a trial court must employ in determining whether to grant a motion for a new trial is: First, the trial court must decide whether a mistake occurred at trial. Second, if the trial court concludes that a mistake occurred, it must determine whether the mistake provided

a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. The moving party must demonstrate to the trial court that he has suffered prejudice from the mistake. Ultimately, it then becomes a question of whether the trial court abused its discretion in denying the motion for a new trial. See Justice Newman's opinion in *Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116 (2000), where she said, at pages 466 and 1122:

"Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion . . . .

"Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial . . . First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial . . . The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake."

Accordingly, the defendants in their post-trial motions did not show to this court's satisfaction that a mistake was made during this trial; let alone that there was a mis-

take of such magnitude that it so prejudiced the defendants' case as to warrant the grant of a new trial.

### *Hypothetical Questions to Plaintiff's Expert Witness by Plaintiff's Counsel*

This court believes that the hypothetical questions of plaintiff's counsel made during this trial were proper and were not prejudicial to defendants. Defendants point to the video deposition of Daniel C. DuPont D.O., and claim that the hypothetical questions posed to Dr. DuPont were prejudicial in that plaintiff's counsel was allowed by this court to assume that plaintiff removed the defendants' floor tile and to assume that plaintiff did not work with Azrock asbestos products. Defendants miss the purpose of expert testimony. Dr. DuPont was not a fact witness who testified as to whose asbestos floor tile plaintiff used in his prior employment of laying asbestos floor tile. Dr. DuPont was presented by plaintiff to show the harm that working with asbestos floor tile caused to plaintiff's health without regard to who the manufacturer was of the asbestos floor tile he used in his prior employment.

### *Prejudicial Comments to Jury by Plaintiff's Counsel*

As to defendants' claim of purported prejudicial comments made in plaintiff's counsel's closing arguments, this court does not believe that plaintiff's counsel's comments were out of the norm for any trial provided the give and take that both sides usually engage in during a trial. Certainly there were no comments made by plaintiff's counsel that were so prejudicial as to require the grant of a new trial. Defendants had ample opportu-

nity to rebut plaintiff's arguments in their own closing argument to the jury. Counsel for both Amtico and Kentile had an opportunity based on whatever evidence was produced at trial to rebut and dispel the reasonable inferences and suggestions made during closing remarks.

### Rational Basis for Jury's Finding in Favor of Azrock

The jury found that defendant Azrock's asbestos-containing floor tile was not defective and therefore did not factually cause plaintiff's injuries. (Phase II jury verdict slip question nos. 2 and 3.) In their answers to interrogatories, Amtico and Kentile admitted they manufactured and sold asbestos-containing floor tile and the specific amount or percentage of asbestos contained in their floor tile product and their lack of warnings for the use of their products during the years that plaintiff was employed in laying asbestos floor tile. No such evidence was produced at trial as to the amount of asbestos contained in Azrock asbestos floor tile or whether or not warnings were provided with Azrock's products. This court believes that there was sufficient evidence before the jury to have concluded that the other defendant, Azrock, was not responsible for plaintiff's injury.

### Asbestos Products Are Inherently Dangerous Products

The Supreme Court has long recognized that asbestos containing products are inherently dangerous products, *Azzarello v. Black Brothers Company Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978). See the Supreme Court's footnote 12 at pages 559 and 1027:

"We believe that an adequate charge to the jury, one which expresses clearly and concisely the concept of 'defect,' while avoiding interjection of the 'reasonable man' negligence terminology, is the jury instruction directed to the definition of a 'defect,' which was fashioned in large part by the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions, Civil Instruction Subcommittee: 'The [supplier] of a product is the guarantor of its safety. The product must, therefore, be provided with every element necessary to make it safe for [its intended] use, and without any condition that makes it unsafe for [its intended] use. If you find that the product, at the time it left the defendant's control, lacked any element necessary to make it safe for [its intended] use or contained any condition that made it unsafe for [its intended] use, then the product was defective, and the defendant is liable for all harm caused by such defect.' Pennsylvania Standard Jury Instruction 8.02 (Civil), Subcommittee Draft (June 6, 1976)."

The Superior Court in *Andaloro v. Armstrong World Industries, supra,* said at pages 87-88:

"Crane's second issue concerns the court's statement to the jury that asbestos products 'are inherently dangerous' and 'require adequate warnings.' Crane contends that 'by instructing the jury that "asbestos products are inherently dangerous products," and that "asbestos products require adequate warnings," the court essentially eliminated plaintiffs' burden of proof, excusing them from the duty to show that John Crane's products were unreasonably dangerous without warnings.' . . .

"Crane's argument misconstrues the content and purpose of the court's instruction. The court's statement that 'asbestos-containing products are inherently dangerous

products' signals the court's recognition of the legal question to be answered by the trial judge before a strict liability case may proceed to the jury. See *Azzarello v. Black Brothers Co. Inc.,* 480 Pa. 547, [558,] 391 A.2d 1020, 1026 (1978) (determining that issue of whether a product is 'unreasonably dangerous' is a question of social policy properly determined by trial judge as a matter of law). Judge Halbert explained his position correctly and succinctly as follows:

" 'Asbestos proceedings are strict liability actions. In this light, it is proper for this court to make an initial determination that asbestos is inherently dangerous within the context of explaining strict liability. To hold otherwise would undermine the precedential basis for trying asbestos actions . . . statewide.' Trial court opinion at 16.

"In this instance, the trial court made the statement in question while framing the issue for the jury's consideration of whether John Crane's product, which the court had determined to be dangerous as a matter of law, was defective due to lack of adequate warnings. R.R. at 3136a-3137a. We conclude that the court's discussion was proper and consistent with our Supreme Court's direction. See *Azzarello,* [480 Pa. at 558,] 391 A.2d at 1026. Crane's argument to the contrary is not supported by Pennsylvania law and is therefore without merit."

Accordingly, this court finds that defendants' asbestos floor tile products are inherently dangerous products and plaintiff was given no warning of their defect since both defendants admitted in their Interrogatories that they did not give asbestos warnings until plaintiff ended his employment of laying asbestos floor tile in 1977 (Amtico in 1977; Kentile in 1978).

## Grounds for Entering Judgment N.O.V.

Judgment n.o.v. is an action that a trial court will not take lightly and hence such relief is granted in only a relatively rare and special case because our system of jurisprudence is based on the jury as the fact-finder. See Chief Justice Cappy's concurring opinion in *Hutchison v. Luddy,* 560 Pa. 51, 742 A.2d 1052 (1999), where he said at pages 71 and 1062:

"A judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of [the plaintiff,] the verdict winner . . . We must view the evidence in the light most favorable to . . . [the plaintiff] . . . as verdict winner, giving him the benefit of every reasonable inference of fact arising therefrom. Any conflict in the evidence must be resolved in favor [of the plaintiff] . . . It is important to note that a reviewing judge's, or justice's, 'appraisment of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations.'"

As stated above, this was not a case where the jury's verdict is clearly erroneous. In fact, this court believes that the jury's verdict was supported by the evidence. Therefore, this court saw no reason to overturn the jury's verdict by entering a judgment n.o.v. in favor of the defendants.

## Reverse Bifurcation

Reverse bifurcation is a procedure well recognized by the Superior Court. In *Andaloro v. Armstrong World Indus., supra,* the Superior Court said at page 88:

"Initially, we note that *Crane* provides no authority in support of its conclusion that prejudice necessarily in-

ured to the defense. Secondly, *Crane* fails to demonstrate that any prejudice actually accrued. Indeed, *the bifurcated manner in which this case was tried renders prejudice far less likely than it might otherwise have been.*" (emphasis supplied)

This court finds that the defendants have not shown that they were in any way prejudiced by this case being reverse bifurcated.

## Consolidation of Two Asbestos Cases

This court did not err in consolidating this case with the case of *Hood v. Georgia-Pacific* because both cases involved plaintiffs who suffered asbestos caused injuries. This court is satisfied that there was no prejudice to plaintiffs or to defendants in both cases. Defendants have not shown that they were in fact prejudiced in any way. Nor have defendants cited any Pennsylvania appellate court case which proscribes the consolidation of cases such as was done here. See *Andaloro v. Armstrong World Industries, supra,* where the Superior Court approved the trial court's consolidation of several cases. The court said at page 88:

"Crane asserts that the trial court erred in refusing to sever the five cases at issue in this appeal . . . . Crane argues that the trial of the asbestosis claims of Burkett, Greenhalgh, Ruby, and Swan with the mesothelioma claim of Franklin Andaloro prejudiced the defense . . . .

"We find the trial court's reasoning on this issue unassailable. Crane cannot show prejudice as a result of the trial court's decision not to sever these cases . . . ."

Both plaintiffs in this case were similarly aged and suffered from pulmonary asbestosis. As with the reverse

bifurcation of cases, the Superior Court has shown an acceptance for procedures that provide judicial economies.

### Fair Share Act

On the issue of the imposition of joint and several liability on the defendants, in particular, the applicability of the Fair Share Act, 42 Pa.C.S. §7102 to this case, this court is bound by the decision of the Commonwealth Court in *DeWeese v. Weaver,* 880 A.2d 54 (Pa. Commw. 2005), which declared the Fair Share Act to be unconstitutional and void.

### CONCLUSION

For all the foregoing reasons, the judgment in favor of plaintiff and against defendants should be affirmed.