J-A29012-14
J-A29013-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

ROSEMARY   C.   CRAWFORD,   ESQ.,   :   IN THE SUPERIOR COURT OF
TRUSTEE IN BANKRUPTCY,                :           PENNSYLVANIA
                                                           :
                 Appellee                          :
                                                           :
            v.                                         :
                                                           :
GREGORY M. MAKOZY,                       :
                                                           :
                 Appellant                        :   No. 26 WDA 2014

Appeal from the Order December 20, 2013,
Court of Common Pleas, Butler County,
Civil Division at No. 2012-22108

ROSEMARY   C.   CRAWFORD,   ESQ.,   :   IN THE SUPERIOR COURT OF
TRUSTEE IN BANKRUPTCY,                :           PENNSYLVANIA
                                                           :
                 Appellee                          :
                                                           :
            v.                                         :
                                                           :
GREGORY M. MAKOZY,                       :
                                                           :
                 Appellant                        :   No. 321 WDA 2014

Appeal from the Order January 29, 2014,
Court of Common Pleas, Butler County,
Civil Division at No. 2012-22108

BEFORE:  DONOHUE, ALLEN and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED DECEMBER 5, 2014**

Appellant, Gregory M. Makozy ("Makozy"), appeals from the order

entered on December 23, 2013 in the Court of Common Pleas of Butler

County compelling him to produce documents and answer questions to

*Retired Senior Judge assigned to the Superior Court.

which he invoked his Fifth Amendment privilege against self-incrimination. Makozy also appeals from the order entered on January 29, 2014 in the Court of Common Pleas of Butler County that, inter alia, directed him to deposit $150,000 with the Sheriff of Butler County pursuant to Rule 3118(a) of the Pennsylvania Rules of Civil Procedure. After careful review, we affirm both of the trial court's orders.

The trial court summarized the relevant factual history of this case as follows:

> [Rosemary C. Crawford, Esquire ("Crawford")] is the [t]rustee in [b]ankruptcy for one Maria Makozy [("Mrs. Makozy")]. Pursuant to that role, [Crawford] filed an [a]mended [c]omplaint against [Makozy], [Mrs.] Makozy's husband, in the United States Bankruptcy Court for the Western District of Pennsylvania on February 28, 2011. [Crawford] alleged that on April 18, 2008, a judgment was entered in the Court of Common Pleas of Butler County, Pennsylvania, against [Mrs.] Makozy and A-1 Mortgage Corporation, and in favor of John Sandherr [("Mr. Sandherr")]. [Crawford] alleged that [Makozy] fraudulently orchestrated a series of transactions intended to divest both his wife and A-1 Mortgage Corporation of any assets against which Mr. Sandherr could execute his judgment. Prior to the commencement of trial, the parties reached a resolution, and a [s]tipulation for [e]ntry of [j]udgment was entered on August 28, 2012. In said stipulation, judgment was entered against [Makozy] and in favor of [Crawford] for $100,000.

Trial Court Opinion, 3/25/14, at 1-2.

- 2 -

On November 7, 2012, Crawford filed a praecipe for judgment for the $100,000 in the Butler County Court of Common Pleas. That same day, Crawford issued a subpoena to Makozy for a deposition in aid of execution in which she also requested that he produce specified documents. On February 26, 2013, following numerous delays in scheduling his deposition, Makozy filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. On April 15, 2013, Makozy filed a pro se suggestion of bankruptcy in the Butler County Court of Common Pleas alleging, inter alia, that he had filed for bankruptcy in Florida. In his suggestion of bankruptcy, Makozy contended that Crawford was improperly trying to collect the $100,000 debt. *See* Suggestion of Bankruptcy, 4/15/13, ¶ 7. On April 18, 2013, the trial court issued an order finding that the United States District Court for the Southern District of Florida dismissed Makozy's bankruptcy proceeding and that his suggestion of bankruptcy was therefore moot. On May 29, 2014, Makozy filed a pro se motion to reconsider suggestion of bankruptcy in which he claimed that he refiled his bankruptcy case in Florida and conducted his first meeting of creditors pursuant to 11 U.S.C. § 341. Makozy ultimately withdrew his motion to reconsider suggestion of bankruptcy. *See* Trial Court Order, 6/26/13.

On August 14, 2013, Crawford filed a motion for sanctions in which she sought relief pursuant to Rule 3118 of the Pennsylvania Rules of Civil

Procedure. Crawford asked the trial court to direct Makozy to deposit with the Sheriff of Butler County the funds that he received from the sale of his Blackstone Ridge property, so that she could levy upon those proceeds in satisfaction of the $100,000 judgment entered in her favor. Plaintiff's Third Motion for Sanctions, 8/14/13, ¶ 10. Crawford further requested that the trial court require Makozy to account for the funds from the sale of Makozy's Blackstone Ridge property to the extent that he has spent or otherwise lost them. *See id.* ¶ 11.

On September 11, 2013, following the filing and disposition of several more motions, Crawford attempted to take Makozy's deposition. However, in response to Crawford's questions, Makozy invoked his Fifth Amendment privilege against self-incrimination. Makozy likewise asserted his Fifth Amendment privilege for the documents that Crawford requested he produce in her notice of deposition dated August 15, 2013. On September 12, 2013, the trial court ordered Crawford and Makozy to provide it with a transcript of the deposition so that it could assess Makozy's invocation of his Fifth Amendment privilege. On November 6, 2013, Makozy filed a brief in support of his invocation of the Fifth Amendment privilege in which he asserted that his answers to the questions Crawford asked during his deposition could subject him to prosecution for perjury to the extent that his answers differ from the information that he provided in his bankruptcy petition. *See* Brief

in Support of Defendant's Invocation of His Fifth Amendment Privilege, 11/6/13, at 3-12.

On December 23, 2013, the trial court issued a memorandum opinion and order in which it directed Makozy to answer sixty of the 161 questions for which he invoked his Fifth Amendment privilege against self-incrimination and produce all of the documents that Crawford requested. On December 30, 2013, Makozy filed a timely notice of appeal from this order at Superior Court docket number 26 WDA 2014. On January 3, 2014, the trial court ordered Makozy to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On January 8, 2014, Makozy timely filed his Rule 1925(b) statement.

On January 23, 2014, the trial court held a hearing on Crawford's motion for sanctions. On January 29, 2014, the trial court issued an order granting Crawford's motion for sanctions in which it, inter alia, directed Makozy to deposit $150,000 with the Butler County Sheriff for Crawford to levy upon in satisfaction of the $100,000 judgment in her favor. This order also directed Makozy to disclose to the Sheriff of Butler County the whereabouts of all of his property located in Pennsylvania subject to levy and to return to the Sheriff any property that he removed from the county or

concealed for the purposes of avoiding execution. This order further awarded counsel fees to Crawford's attorney.

On February 25, 2014, Makozy filed a timely notice of appeal from this order at Superior Court docket number 321 WDA 2014. On February 26, 2014, the trial court ordered Makozy to file a Rule 1925(b) statement in conjunction with this appeal. On March 11, 2014, Makozy timely filed his Rule 1925(b) statement.

In Makozy's first appeal, at docket number 26 WDA 2014, Makozy raises the following issues:

> 1. Did the [c]ourt err in overruling [Makozy]'s [i]nvocation of his Fifth Amendment [p]rivilege at his September 11, 2013 deposition?
>
> 2. Did the [c]ourt err in ordering [Makozy] to answer the questions identified in the [c]ourt's December 20, 2013[] [m]emorandum [o]pinion, in spite of his invocation of his Fifth Amendment [p]rivilege?
>
> 3. Did the [c]ourt err in finding that the questions identified in the [c]ourt's December 20, 2013[] [m]emorandum [o]pinion could not incriminate [Makozy] or furnish a link in the chain of evidence leading to [Makozy]'s prosecution in a crime?
>
> 4. Did the [c]ourt err in finding that [Makozy] waived his Fifth Amendment [p]rivilege by testifying at his 11 U.S.C. § 341 [m]eeting of [c]reditors?
>
> 5. Did the [c]ourt err by determining that [Makozy]'s Fifth Amendment [p]rivilege does not protect the production of documents requested by

[Crawford] in her August 15, 2013[] [n]otice of [d]eposition?

6. Did the [c]ourt err in requiring [Makozy] to produce documents at his deposition as requested by [Crawford] in her August 15, 2013[] [n]otice of [d]eposition?

7. Did the [c]ourt err in finding that [Makozy] failed to meet his burden in establishing that the production of documents as requested by [Crawford] in her [n]otice of [d]eposition was protected by the Fifth Amendment of the United States Constitution?

8. Did the [c]ourt err in ordering [Makozy] to attend a deposition on January 23, 2014, for the purpose of answering questions as provided for in the [c]ourt's [m]emorandum [o]pinion, despite [Makozy] having invoked his Fifth Amendment [p]rivilege?

Makozy's Brief for Docket Number 26 WDA 2014 (hereinafter "Makozy's Brief I") at 4-5.[1]

---

[1] We note that the December 23, 2013 order from which Makozy appeals is an interlocutory order. In the Statement of Jurisdiction section of Makozy's appellate brief, he states that we have jurisdiction over this appeal as a collateral order pursuant to Rule 313(b) of the Pennsylvania Rules of Appellate Procedure. Neither Crawford nor the trial court contests the appealability of the December 23, 2013 order. Rule 313(b) defines a collateral order as follows:

> A collateral order is an order [1] separable from and collateral to the main cause of action [2] where the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). The December 23, 2013 order is separable from and collateral to the main cause of action because we can assess the invocation

We begin by addressing the first, second, third, and eighth issues of Makozy's first appeal, as each involves the trial court's decision to overrule his invocation of the Fifth Amendment privilege against self-incrimination at his September 11, 2013 deposition. *See* Makozy's Brief I at 4-5. "Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *McNeil v. Jordan*, 894 A.2d 1260, 1268 (Pa. 2006); *see also Commonwealth v. Long*, 625 A.2d 630, 634 (Pa. 1993) ("A trial court's ruling regarding the application of the privilege will not be disturbed on appeal absent a showing of an abuse of discretion."). "An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence o[f] the record." *Bratic v.*

---

of Makozy's Fifth Amendment rights without considering the merits of the underlying case. *See Ben v. Schwartz*, 729 A.2d 547, 551-52 (Pa. 1999) (explaining that an order is "separable" from the main cause of action if it is capable of review without considering the underlying merits of the case). The December 23, 2013 order also involves a right, specifically Makozy's Fifth Amendment privilege against self-incrimination, that is too important to be denied review. *See Melvin v. Doe*, 836 A.2d 42, 47 (Pa. 2003) (stating that an issue is too important to be denied review where it involves "rights deeply rooted in public policy going beyond the particular litigation at hand"). Furthermore, the appeal of the December 23, 2013 order presents a claim that would be irreparably lost if review were postponed until final judgment in the case because there is no effective remedy for protecting Makozy once he waives his privilege against self-incrimination. For these reasons, we conclude that the December 20, 2013 order is collateral and appealable as of right under Rule 313(b).

*Rubendall*, 99 A.3d 1, 7 (Pa. 2014) (quoting *Zappala v. Brandolini Prop.*

*Mgmt., Inc.*, 909 A.2d 1272, 1283 (Pa. 2006)).

Makozy argues that the trial court erred by compelling him to answer sixty of the 161 questions for which he invoked his Fifth Amendment privilege. Makozy's Brief I at 10-13. Makozy claims that these sixty questions "on their face suggest that [he] diverted assets to third parties" in an attempt to avoid disclosing them in his bankruptcy proceedings. *Id.* at 11. Makozy asserts that a response could conceivably result in him being subject to perjury charges. *Id.* Thus, Makozy contends that "[i]t is impossible to say that these questions cannot have any tendency to implicate Makozy in a criminal prosecution or that they don't potentially furnish a link in the chain of evidence needed to convict." *Id.* at 10.

The Fifth Amendment to the United States Constitution, as applied to the states via the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself," and Article 1, Section 9 of the Pennsylvania Constitution holds that the accused in a criminal prosecution "cannot be compelled to give evidence against himself." U.S. Const. amend. V; Pa. Const. art. 1, § 9.3. The privilege against self-incrimination is "accorded liberal construction in favor of the right it was intended to secure," and may be claimed when a witness "has reasonable cause to apprehend danger from a direct answer." *Hoffman v. U.S.*, 341

U.S. 479, 486 (1951). Importantly, "[f]ederal standards govern invocation of the privilege against self-incrimination in a state court proceeding." *Estate of Baehr*, 596 A.2d 803, 804 n.1 (Pa. Super. 1991).

> The Fifth Amendment privilege against self-incrimination protects any person, an accused or a witness, from being compelled to speak against his penal interest. *See Malloy v. Hogan*, 378 U.S. 1[] (1964). "The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77[] (1973). To claim the privilege, a person must be "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." [*U.S.*] *v. Doe*, 465 U.S. 605, 614, [n.13] (1984) (quoting *Marchetti v.* [*U.S.*] 390 U.S. 39, 53[] (1968)).

> The privilege extends "not only 'to answers that would in themselves support a conviction ... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant.'" *Ohio v. Reiner*, 532 U.S. 17[] (March 19, 2001) (per curiam) (citing *Hoffman v.* [*U.S.*], 341 U.S. 479, 486[] (1951)) (alterations in original). "[I]t need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* (citing *Hoffman*, 341 U.S. at 486-87[]). In other words, "the claim of privilege cannot be sustained if the fear of self-incrimination rests on 'remote and speculative possibilities'; the privilege protects only against 'real dangers.'" [*U.S.*] *v. Jones*, 703 F.2d 473, 476 (10th Cir. 1983) (quoting

> ***Zicarelli v.*** [***N.J. State Comm'n of Investigation***], 406 U.S. 472, 480[] (1964)).

***S.E.C. v. Leach***, 156 F. Supp. 2d 491, 493-94 (E.D. Pa. 2001). However, "[i]nvocation of the privilege must be upheld unless it is perfectly clear, from a careful consideration of all the circumstances of the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency to incriminate." ***In re Gi Yeong Nam***, 245 B.R. 216, 225 (Bankr. E.D. Pa. 2000).

We conclude that the trial court did not abuse its discretion in compelling Makozy to answer the sixty questions at issue. We find no support in the record for Makozy's contention that each of the sixty questions at issue on their face suggests that he diverted assets to avoid disclosing them in his bankruptcy proceedings. Here, many of the sixty questions at issue involve topics including, inter alia, Makozy's marital status, the identities and residences of his children, whether his family has access to credit cards, whether his family purchased plane tickets and rented trucks, his employment status and earnings, and whether his family has twitter accounts. ***See*** Trial Court Opinion, 3/25/14, at 17-19. These questions simply do not, "on their face" as Makozy contends, suggest that he diverted assets to third parties in an attempt to avoid disclosing them in his bankruptcy proceedings.

Additionally, for the remaining questions that do not involve menial family or personal matters, Makozy has provided us with no basis with which to overturn the trial court's decision. The transcript of Makozy's September 11, 2013 deposition is not part of the certified record.[2] Therefore, we do not know the context in which Crawford asked any of the sixty questions at issue and thus, we do not have any reason to conclude that the trial court erred in finding that Makozy would not incriminate himself by answering these questions. The trial court reviewed the transcript of Makozy's September

---

[2] In its March 25, 2014 memorandum opinion, the trial court indicated that it ordered a copy of the transcript of Makozy's September 11, 2013 deposition and that it reviewed the transcript to determine if Makozy properly invoked the Fifth Amendment privilege against self-incrimination. **See** Trial Court Opinion, 3/25/14, at 4, 11-19. However, we have no explanation for why this deposition is not part of the certified record on appeal. Our Court has held that,

> "[i]t is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in this case." **Bennyhoff v. Pappert**, 790 A.2d 313, 318 (Pa. Super. 2001) (citation omitted). Any document which is not part of the official certified record is considered to be non-existent, which deficiency may not be remedied by inclusion in the reproduced record. **Id.**; Pa.R.A.P. 1921. It is the responsibility of the appellant to provide a complete record to the appellate court on appeal, including transcription of deposition testimony. **McNeal v. Eaton Corp.**, 806 A.2d 899 (Pa. Super. 2002).

**Eichman v. McKeon**, 824 A.2d 305, 316 (Pa. Super. 2003). Presumably, Makozy could have supplemented the record with his September 11, 2013 deposition transcript, **see** Pa.R.A.P. 1926(b)(2), but he did not.

- 12 -

11, 2013 deposition and made a determination that Makozy would not incriminate himself by answering the sixty questions at issue and we decline to overturn that determination. *See* Trial Court Opinion, 3/25/14, at 17-19.

Next, we address the fifth, sixth, and seventh issues of Makozy's first appeal, as each involves the trial court's decision to compel him to produce documents that Crawford requested in her notice of deposition dated August 15, 2013. Makozy's Brief I at 17-18. Makozy argues that the Fifth Amendment privilege against self-incrimination extends "to the production of documents under circumstances where such production amounts to a testimonial communication." *Id.* at 18.

The United States Supreme Court has stated the following in regards to the invocation of the Fifth Amendment privilege against self-incrimination and the production of documents:

> As we noted in *Fisher*, the Fifth Amendment protects the person asserting the privilege only from **compelled** self-incrimination. [*Fisher v. U.S.*, 425 U.S. 391, 396 (1976)]. Where the preparation of business records is voluntary, no compulsion is present. A subpoena that demands production of documents "does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought." [*Id.* at 409]. Applying this reasoning in *Fisher,* we stated:
>
> > "[T]he Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being

> incriminated by his own compelled testimonial communications. The accountant's workpapers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him. Furthermore, as far as this record demonstrates, the preparation of all of the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else. The taxpayer cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else."

*U.S. v. Doe*, 465 U.S. 605, 610-11 (1984) (quoting *Fisher*, 425 U.S. at 409-10) (emphasis in original; citations, quotations, and footnote omitted).

The Supreme Court in *Fisher* further explained,

> The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. U.S.*, 354 U.S. 118, 125[] (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof.

*Fisher*, 425 U.S. at 410.

We conclude that the trial court did not abuse its discretion in compelling Makozy to produce the documents that Crawford requested in her notice of deposition dated August 15, 2013. In this case, Makozy complains about the trial court ordering him to produce documents, including, "tax returns, titles, bills of sale, deeds, stocks, profit and loss statements … , evidence of safe deposit boxes or other depositories, trust agreements, bank statements, credit card account statements and documents relating to any trips by Makozy to Las Vegas or another gambling destination." Makozy's Brief I at 17-18. However, Makozy provides no explanation, either in his appellate brief or his brief in support of the invocation of his Fifth Amendment privilege against self-incrimination, as to how any of these documents are "testimonial" and "incriminating" within the facts and circumstances of this particular case. *See id.*; Brief in Support of Defendant's Invocation of His Fifth Amendment Privilege, 11/6/13, at 12-13. Rather, Makozy only asserts that by ordering him to produce the documents at issue, it would effectively be compelling him to admit that the documents existed, were in his possession or control, and were authentic. *See* Makozy's Brief I at 17-18. However, without any further explanation of how producing each document could potentially incriminate him, we have no basis upon which to afford Makozy relief. *Cf. Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 598 (3d Cir. 1980) (holding

that "a witness cannot relieve himself of the duty to answer questions that may be put to him by a mere blanket invocation of the privilege"). Accordingly, we conclude that no relief is due on these issues.

Next, we address the fourth issue that Makozy raises in his first appeal. Makozy argues that the trial court erred when it determined that he waived his Fifth Amendment privilege against self-incrimination by testifying at his 11 U.S.C. § 341 meeting of creditors in regards to the following questions:

> 1. Prior to the time the Bankruptcy Petition was filed on April 11, 2013, you owned a property on Dobson Road in Adams Township, Butler County, Pennsylvania, is that correct?
>
> 2. Do you recall a discussion regarding the Dobson Road property at the time of your meeting with creditors?
>
> 3. Do you recall testifying at the meeting of creditors that you gave this property to your son, Gregory, in the year preceding the bankruptcy filing?
>
> 4. Did Gregory pay you any money for the property on Dobson Road?
>
> 5. Do you agree that your son, Gregory, paid you nothing in consideration for the conveyance of that real estate?

Makozy's Brief I at 13. Makozy asserts that he did not waive his privilege by testifying to these questions at his section 341 meeting of creditors because his bankruptcy case in Florida and the instant matter are not two parts of

the same proceeding, as the trial court contends. *See id.* at 13-17; *see also* Trial Court Opinion, 12/23/13, at 10-12 (citing *In re Gi Yeong Nam*, 245 B.R. at 228-32). Makozy further argues that "it is possible that the information solicited at [his] meeting of creditors could be different than that given during his deposition, and thus, the invocation of the privilege is proper[.]" Makozy's Brief I at 17.

We conclude that the trial court did not abuse its discretion by ordering Makozy to answer the five questions at issue.[3] The certified record on appeal contains neither the transcript of Makozy's September 11, 2013 deposition nor a transcript relating to what he disclosed at his section 341 meeting of creditors on May 16, 2013. The only indication we have of what transpired at Makozy's section 341 meeting of creditors in regards to the Dobson Road property is a brief passage of the transcript from that meeting that Crawford's counsel read for the trial court. *See* N.T., 11/27/13, at 13-14. The passage that Crawford's counsel read to the trial court states the following:

> [Makozy]: I had a piece of land that I gave him, my son, had to be a year ago, something like that. I went and I gave it to him. It wasn't worth any kind of money. Him and his friends, they were going to

---

[3] In his appellate brief, Makozy contends that "the trial [c]ourt does not seem to disagree that [these five] questions are potentially incriminating." Makozy's Brief I at 13. However, the trial court did not indicate in its opinion whether or not it believed the five questions at issue to be incriminating. *See* Trial Court Opinion, 3/25/14, at 10-12.

go and spend the summer building the home on it.
The land was valued I think at 2,000 bucks,
something like that.

Question by the trustee:  Valued by whom?

[Makozy]:  By Butler County.

*Id.*

Other than this passage, we have no information regarding what questions Makozy answered at his meeting of creditors or how he answered them, despite the fact Makozy testified extensively about the Dobson Road property.  ***See id.***  Thus, for question one, we do not know whether Makozy testified to exactly when he owned the Dobson Road property.  We only know that he stated that he gave it to his son about year prior to the meeting of creditors.  ***Id.***  Questions two and three only ask Makozy whether he **remembers** testifying to certain subject matter during the meeting of creditors and thus any answer to those questions will not incriminate him.  ***See id.***  For questions four and five, we only know that Makozy testified at the meeting of creditors that he "gave" the property to his son.  ***See id.***  Because of the limited testimony we have, however, we have no detailed information regarding the consideration (if any) paid to obtain the Dobson Road property.  ***See id.***  We likewise do not know the context in which Crawford asked Makozy the five questions at issue because we do not have the deposition transcripts.  Makozy has provided no explanation as to how

answering each question could incriminate him – other than a general assertion that the answers might differ from the information he provided at his meeting of creditors. **See id.** at 13-17. Thus, Makozy has provided this Court with no basis by which we could determine that he could face criminal prosecution by answering these questions. Because the invocation of the Fifth Amendment privilege against self-incrimination cannot rest on "remote and speculative possibilities," we cannot say that the trial court abused its discretion by compelling Makozy to answer these questions.[4] **Cf. Leach**, 156 F. Supp. 2d at 493-94 (quoting **Jones**, 703 F.2d at 476).

In Makozy's second appeal, at docket number 321 WDA 2014, Makozy raises the following issues for review:

> 1. Did the [c]ourt err in [o]rdering [Makozy] to deposit with the Sheriff $150,000.00 when there was no evidence that such funds presently exist?
>
> 2. Did the [c]ourt err in [o]rdering [Makozy] to disclose to the Sheriff of Butler County the whereabouts of property of [Makozy], within the State of Pennsylvania, that can be subject to Levy, when there is no evidence of record that such property exists?
>
> 3. Did the Court violate [Makozy]'s Fifth Amendment [r]ights by ordering him to disclose to the Sheriff of

---

[4] We note that our rationale in reaching this conclusion differs from that of the trial court. However, "[w]e can affirm the [trial] court's decision if there is any basis to support it, even if we rely on different grounds to affirm." **Commonwealth v. McLaurin**, 45 A.3d 1131, 1138 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013).

Butler County the whereabouts of property of [Makozy], within the State of Pennsylvania?

4. Did the [c]ourt err in [o]rdering [Makozy] to return to the County of Butler any property, cash, investments or personalty that has been removed from the County or concealed for the purposes of avoiding execution, and to deliver the same to the Sheriff, when there is no evidence of record that such property exists?

5. Did the Court violate [Makozy]'s Fifth Amendment Rights by ordering him to return to the County of Butler any property, cash, investments or personalty that has been removed from the County or concealed for the purposes of avoiding execution, and to deliver the same to the Sheriff?

Makozy's Brief for Docket Number 321 WDA 2014 (hereinafter "Makozy's Brief II") at 6-7.[5]

We begin by addressing the first, second, and fourth issues of Makozy's second appeal, as each involves the trial court's order directing him to deposit $150,000 with the Sheriff of Butler County, disclose to the

---

[5] Makozy raised an issue concerning the trial court's award of fees to Crawford's counsel in his Rule 1925(b) statement for his second appeal, but failed to include the issue in the statement of questions involved section of his appellate brief. *See* Rule 1925(b) Statement, 7/26/13, ¶ 2; Makozy's Brief II at 6-7. "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). As a result, Makozy has waived this claim. Waiver is further supported by the fact that Makozy included no argument on the issue in his appellate brief. *See* Makozy's Brief II at 11-19. Where an "[a]ppellant has cited no legal authorities nor developed any meaningful analysis, we find [the] issue waived for lack of development." **Commonwealth v. McLaurin**, 45 A.3d 1131, 1139 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013) (citing Pa.R.A.P. 2119(a)); **see also Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009)).

Sheriff all of his property located in Pennsylvania subject to levy, and return to the Sheriff any property he removed from Butler County or concealed for purposes of avoiding execution pursuant to Rule 3118(a) of the Pennsylvania Rules of Civil Procedure. *Id.* at 11-14. Makozy argues that the trial court erred by directing him to deposit with the Butler County Sheriff $150,000 of a June 25, 2012 $505,915.38 wire transfer to Makozy Real Estate, LLC from the sale of Makozy's Blackstone Ridge property because there is no evidence that such funds exist. *Id.* Makozy likewise avers that the trial court erred by ordering him to disclose to the Sheriff of Butler County the whereabouts of his property within Pennsylvania subject to execution and to return property to the Sheriff that he removed from Butler County or concealed for the purposes of avoiding execution. *Id.* at 13-14. Makozy contends that the trial court did not possess evidence that any such property existed. *Id.*

"When reviewing the grant or denial of Rule 3118 supplementary relief, this Court's review is limited to determining whether the trial court abused its discretion." *Marshall Ruby and Sons v. Delta Min. Co.*, 702 A.2d 860, 862 (Pa. Super. 1997). Rule 3118(a) provides as follows:

**Rule 3118. Supplementary Relief in Aid of Execution**

> (a) On petition of the plaintiff, after notice and hearing, the court in which a judgment has been entered may, before or after the issuance of a writ of execution, enter an order against any party or person

(1) enjoining the negotiation, transfer, assignment or other disposition of any security, document of title, pawn ticket, instrument, mortgage, or document representing any property interest of the defendant subject to execution;

(2) enjoining the transfer, removal, conveyance, assignment or other disposition of property of the defendant subject to execution;

(3) directing the defendant or any other party or person to take such action as the court may direct to preserve collateral security for property of the defendant levied upon or attached, or any security interest levied upon or attached;

(4) directing the disclosure to the sheriff of the whereabouts of property of the defendant;

(5) directing that property of the defendant which has been removed from the county or concealed for the purpose of avoiding execution shall be delivered to the sheriff or made available for execution; and

(6) granting such other relief as may be deemed necessary and appropriate.

Pa.R.Civ.P. 3118(a). Our Supreme Court has held that "Rule 3118 authorizes summary proceedings in aid of execution for the purpose of maintaining the *status quo* of the judgment debtor's property and may be used only for that purpose." ***Greater Valley Terminal Corp. v. Goodman***,

202 A.2d 89, 94 (Pa. 1964). To demonstrate entitlement to relief, the movant must establish: (1) the existence of an underlying judgment; and (2) property of the debtor subject to execution. **Marshall Ruby and Sons**, 702 A.2d at 862.

We conclude that the trial court did not abuse its discretion in ordering Makozy to deposit $150,000 with the Sheriff of Butler County. Here, there is no dispute of the existence of the underlying $100,000 judgment against Makozy in Crawford's favor. Makozy only complains that there is no evidence of the existence of the $150,000. However, the certified record reveals that Makozy produced a JP Morgan Chase Bank account statement showing a June 25, 2012 wire transfer for $505,915.38 from PNC Bank to Makozy Real Estate, LLC for the sale of Makozy's Blackstone Ridge property. Plaintiff's Third Motion for Sanctions, 8/14/13, Exhibit A. That statement further reflects a $500,000 withdrawal from the account on July 2, 2012. Makozy has not averred, testified, or provided any evidence suggesting that he is no longer in possession of the $500,000. Thus, the certified record supports the trial court's conclusion that Makozy has sufficient funds to deposit $150,000 with the Sheriff of Butler County.

We further conclude that the trial court did not abuse its discretion by ordering Makozy to disclose to the Sheriff of Butler County the whereabouts of his property within Pennsylvania subject to execution and to return

property to the Sheriff that he removed from Butler County or concealed for the purposes of avoiding execution. As we established above, the record supports the trial court's finding that there was a wire transfer for $505,915.38 to Makozy Real Estate, LLC on June 25, 2012, a subsequent $500,000 withdrawal from the account on July 2, 2012, and that Makozy has not made any showing that he is no longer in possession of the funds. **See supra**, p. 22. We take no umbrage with the trial court issuing this order in an attempt to aid Crawford in determining where the $500,000 is currently located (either in cash or purchases). While we acknowledge that "[o]nly property the title to which is clearly in the judgment-debtor is subject to the terms of [Rule 3118(a)]," **Greater Valley Terminal**, 202 A.2d at 92, the trial court's order is not directed to any specific piece of property other than $150,000 of the $505,915.38 wire transfer for which there is record evidence. Additionally, Crawford's motion for sanctions requests relief in the form of an accounting for the proceeds of the $505,915.38 should Makozy's claim that he is not in possession of those funds turn out to be true. Plaintiff's Third Motion for Sanctions, 8/14/13, ¶ 11. Because only Makozy possesses the knowledge of where the $500,000 went following its withdrawal on July 2, 2012, we find no abuse of discretion in the trial court's direction to Makozy to disclose the whereabouts of his property located within Pennsylvania subject to levy or ordering him to return to the Sheriff

any property he removed from Butler County or concealed for the purpose of avoiding execution.

Finally, we address the third and fifth issues that Makozy raises in his second appeal. Each of these issues involves Makozy's claim that the trial court violated his Fifth Amendment rights by ordering him to disclose to the Sheriff of Butler County the whereabouts of his property within Pennsylvania subject to execution and to return property to the Sheriff that he removed from Butler County or concealed for the purposes of avoiding execution. Makozy's Brief II at 16-19. Makozy asserts that by ordering him to provide this information, the trial court would be compelling to admit to the existence of property that he may not have disclosed on his bankruptcy petition, which would therefore lead to perjury charges. *Id.*

We conclude that Makozy has waived this issue on appeal for failing to properly raise it before the trial court. Makozy was aware that Crawford, in her motion for sanctions, was seeking relief pursuant to Rule 3118(a). *See* Plaintiff's Third Motion for Sanctions, 8/14/13, ¶¶ 1-11. Makozy never raised his Fifth Amendment Privilege against self-incrimination in regards to Crawford seeking relief pursuant to Rule 3118(a) in either his response to Crawford's third motion for sanctions or the hearings in regards to that motion. *See* Response to Plaintiff's Third Motion for Sanctions, 8/14/13, ¶¶ 1-11; N.T., 8/14/13, at 2-11; N.T., 11/27/13, at 2-27; N.T.; 1/23/14, at 2-

27.  However, Makozy argues that he preserved his Fifth Amendment claims by raising them in his Rule 1925(b) statement.  Makozy's Brief II at 16.  Our Supreme Court has held that

> in general, a Rule 1925(b) statement cannot resurrect an otherwise untimely claim or objection. Because issues not raised in the lower court are waived and cannot be raised for the first time on appeal, a 1925(b) statement can therefore never be used to raise a claim in the first instance.  Pa.R.A.P. 302.  Pennsylvania law is clear that claims and objections that are not timely made are waived.

***Steiner v. Markel***, 968 A.2d 1253, 1257 (Pa. 2009).  Accordingly, because Makozy did not raise these Fifth Amendment claims until his Rule 1925(b) statement, he has waived them.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2014