J-S28039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.C.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.S., MOTHER | : | No. 288 MDA 2019 |

Appeal from the Decree Entered January 16, 2019
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2652 of 2018

| | | |
|---|---|---|
| IN RE: A.E.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.S., MOTHER | : | No. 289 MDA 2019 |

Appeal from the Decree Entered January 16, 2019
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2018-02653

BEFORE: BOWES, J., McLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:              **FILED JULY 31, 2019**

T.S. (Mother) appeals from the decrees entered January 16, 2019, in the Court of Common Pleas of Lancaster County, terminating involuntarily her parental rights to her children, A.C.S., a male born in November 2008, and A.E.S., a female born in August 2011 (collectively, Children).[1] We affirm.

---

[1] The orphans' court entered a separate decree confirming the consent of A.C.S.'s father, J.S., III, and terminating his parental rights on the same day. In addition, the orphans' court entered a decree confirming the consent of A.E.S.'s father, T.S., and terminating his parental rights on March 27, 2019.

* Retired Senior Judge assigned to the Superior Court.

We glean the following factual and procedural history of this matter from the certified record. According to the orphans' court opinion, Mother has a history of involvement with the Lancaster County Children and Youth Social Services Agency (the Agency) dating back to 2014. Orphans' Court Opinion, 3/6/2019, at 1 (unnumbered pages). In April 2017, the Agency received a report indicating that Mother left a child in her car while she went shopping. *Id.* As of a result of this incident, Mother incurred criminal charges and was indicated as a perpetrator of abuse. *Id.* at 1-2. Subsequently, in June 2017, the Agency received a report indicating that Mother overdosed while in her car with a child in the backseat. *Id.* at 2. She incurred additional criminal charges and the Agency implemented a safety plan, pursuant to which Children's maternal grandmother would supervise all contact between Mother and Children. *Id.* However, Children's maternal grandmother was hospitalized in July 2017 and Mother signed a family service plan the following month. *Id.* In September 2017, the Agency received a report indicating that Mother "was removed" from the maternal grandmother's home due to the hospitalization, that Mother was homeless, and that she was sleeping in her car with Children. *Id.* The Agency obtained custody of Children on September 13, 2017, and they were adjudicated dependent on October 19, 2017. *Id.* at 1.

On December 12, 2018, the Agency filed a petition to terminate Mother's parental rights to Children involuntarily. The orphans' court conducted a hearing on January 15, 2019, at which Mother failed to

appear.[2, 3] At the conclusion of the hearing, the court stated that it would terminate Mother's rights. The court entered decrees memorializing this decision on January 16, 2019. Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal, on February 13, 2019.

Mother now raises the following claims for our review.

I. Whether the [orphans' c]ourt erred when it terminated Mother's rights?

II. Whether the [orphans' c]ourt erred in finding that [] terminating Mother's parental rights would best serve the needs and welfare of the [C]hildren?

Mother's Brief at 8 (suggested answers omitted).

---

[2] The transcript of the hearing indicates erroneously that it took place in 2018 rather than 2019.

[3] Robert S. Cronin, Esquire, represented Children during the involuntary termination proceedings as their guardian *ad litem*. Attorney Cronin stated as follows at the conclusion of the hearing.

> Your Honor I'm also in support of the Agency's request. And I had the opportunity to speak with the [C]hildren yesterday and explained what is happening presently with respect to them. And they are both desirous, and, in fact, expressed to me that they want to remain where they are and they want to be adopted. And I'm in support of the termination of parental rights as well for both fathers and the mother.

N.T., 1/15/2019, at 16. In addition, Attorney Cronin confirmed that no conflict existed between Children's legal interests and best interests. ***Id.*** In addition, he has filed a brief on appeal supporting the termination of Mother's parental rights.

We review Mother's claims in accordance with the following standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. *See* 23 Pa.C.S. § 2511. It requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child[.]

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights to Children pursuant to subsections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of 2511(a), as well

as subsection 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision pursuant to subsections 2511(a)(2) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> ***

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> ***

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

> ***

23 Pa.C.S. § 2511(a)(2), (b).

We begin by assessing whether the orphans' court committed an abuse of discretion by terminating Mother's parental rights to Children pursuant to subsection 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

In its opinion, the orphans' court found that the Agency presented clear and convincing evidence in support of its petition to terminate Mother's rights pursuant to subsection 2511(a)(2). The court reasoned that Children have been in foster care for sixteen months and that Mother failed to complete her child permanency plan objectives. Orphans' Court Opinion, 3/6/2019, at 5 (unnumbered pages).

In response, Mother contends that she was making progress toward completing her objectives and addressing the issues resulting in Children's placement. Mother's Brief at 11. She maintains that she completed a

mental health assessment, completed a drug and alcohol program, located housing, and sought out employment.[4]  *Id.* at 14-16.

We discern no abuse of discretion or error of law by the orphans' court.  During the termination hearing, Agency caseworker Ludie Louis Juste testified regarding Mother's lack of compliance with her objectives.  Mother's objectives included addressing her drug and alcohol, mental health, domestic violence, and parenting issues; remaining crime free; obtaining income and housing; and demonstrating a commitment to Children.  N.T., 1/15/2019, at 10-14.

Ms. Juste testified that Mother has made no progress toward completing her drug and alcohol objective.  *Id.* at 11.  Ms. Juste explained that Mother's drug use remains a concern for the Agency, because she produced positive drug screens for cocaine, methamphetamines, and amphetamines during Children's placement.  *Id.*  Ms. Juste reported that Mother has also failed to complete her mental health objective.  *Id.* at 10.  Mother attended mental health treatment only "briefly" at T.W. Ponessa.  *Id.*

---

[4] In her argument, Mother relies heavily on a transcript from a permanency review hearing conducted on July 31, 2018.  However, this transcript does not appear in the certified record.  We remind Mother that "[i]t is the [a]ppellant's responsibility to provide a complete record on appeal, including requesting the transcription of testimony germane to the appeal."  *McNeal v. Eaton Corp.*, 806 A.2d 899, 903 n.4 (Pa. Super. 2002).

at 12-13. She received a referral for a mental health evaluation but failed to attend because she was arrested and incarcerated. *Id.* at 10-11.

Relatedly, Ms. Juste testified that Mother has failed to remain crime free. Ms. Juste explained that Mother was incarcerated in October 2018 and charged with driving under the influence, possession of a small amount of marijuana, and possession of drug paraphernalia. *Id.* at 11. Mother's new charges were violations of her parole. *Id.* at 12. Mother was released later that month, but was incarcerated again in November 2018. *Id.* at 11-12. Mother was released for a second time approximately a week before the termination hearing but did not contact the Agency. *Id.* at 11.

Ms. Juste further testified that Mother has made no progress toward completing her domestic violence objective. *Id.* at 12. The Agency referred Mother to T.W. Ponessa for domestic violence counseling but the program discharged her unsuccessfully. *Id.* at 13. As for Mother's parenting objective, Ms. Juste agreed that Mother "has not received any positive recommendations to begin that program[.]" *Id.* Ms. Juste added that Mother failed to complete her income and housing objectives, in that she has not provided the Agency with any documentation of income and the Agency does not know where she is residing. *Id.*

Finally, regarding the commitment objective, Ms. Juste testified that the Agency offers Mother biweekly visits with Children. *Id.* Mother has not visited with Children since September 2018 because she was incarcerated

and has not been in communication with the Agency. *Id.* at 13-14. Mother did not request visits while incarcerated. *Id.* at 14.

Thus, the record supports the finding of the orphans' court that Mother has had a "repeated and continued incapacity" to parent Children and cannot or will not remedy her parental incapacity. At the time of the hearing, Children had been in foster care for sixteen months, and Mother had made seemingly no progress toward completing her objectives. Mother exhibited numerous issues that remain unresolved, including a history of drug use and criminal charges, and a lack of appropriate housing. It is clear that Mother will not be in a position to provide appropriate care for Children at any point in the foreseeable future, and Children cannot wait forever. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

We consider next whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to subsection 2511(b). The requisite analysis is as follows.

> S[ubs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the

emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

The orphans' court found that terminating Mother's parental rights will best serve Children's needs and welfare pursuant to subsection 2511(b), because they have been in foster care for sixteen months and Mother will not resolve her parenting deficits in a reasonable amount of time. Orphans' Court Opinion, 3/6/2019, at 5-6 (unnumbered pages). The court emphasized that Children reside in a kinship foster home that is potentially a permanent resource, that they are bonded with their kinship foster family, and that they would like to remain there and be adopted. *Id.* at 6.

Mother, however, contends that her visits with Children went well and that she and Children share a bond. Mother's Brief at 16. She asserts that

the orphans' court erred by failing to ensure that Children would be present at the hearing and by failing to interview them. *Id.* at 17.

The record supports the conclusion of the orphans' court. Ms. Juste testified that terminating Mother's parental rights involuntarily would best serve Children's needs and welfare. She explained that termination would allow Children to be adopted and enjoy the benefits of a safe and permanent home, and that "prolonging the [C]hildren in foster care and not allowing the stability and permanency in their lives would cause greater harm than termination of parental rights." N.T., 1/15/2019, at 14; *see also In re M.M.*, 106 A.3d 114, 119 (Pa. Super. 2014) (determining that the detriment to the children in severing their bond with mother was outweighed by their safety and security needs).

While Mother contends that the orphans' court should have interviewed Children before reaching a conclusion as to subsection 2511(b), we reject this claim. Mother waived her contention by failing to support it with citations to relevant legal authority. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority."). In the alternative, we observe that this Court rejected a similar argument in *In re B.L.L.*, 787 A.2d 1007 (Pa. Super. 2001). In that case, we explained that "there is no statutory requirement nor is there any Pennsylvania appellate decision which

permits or requires the testimony or preference by the child to be placed on the record as an integral part of a termination proceeding."[5] *Id.* at 1014.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Mother's parental rights involuntarily. We therefore affirm the court's January 16, 2019 decrees.

Decrees affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2019

---

[5] In a series of recent opinions, both our Supreme Court and this Court have emphasized the importance of a child's preference, that is, his or her legal interests, in contested involuntary termination proceedings. *See*, *e.g.*, *In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (holding that the failure to appoint counsel to represent a child's legal interests in a contested involuntary termination proceeding is a structural error not subject to a harmless error analysis); *In re Adoption of T.M.L.M.*, 184 A.3d 585, 589 (Pa. Super. 2018) (observing with disapproval that counsel did not set forth the child's preferred outcome on the record and remanding the case due to counsel's failure to represent his legal interests effectively). Nonetheless, our Supreme Court has cited *B.L.L.* favorably, noting that subsection 2313(a) serves to protect this interest by requiring the appointment of legal counsel. *L.B.M.*, 161 A.3d at 174 n.3. Nothing in these recent opinions contradicts the assertion in *B.L.L.* that an orphans' court need not interview a child before terminating parental rights.